369 A.2d 711

PHILADELPHIA ASSOCIATION OF INTERNS AND RESIDENTS and Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellants,

v.

ALBERT EINSTEIN MEDICAL CENTER and Temple University of the Commonwealth System of Higher Education.

Supreme Court of Pennsylvania.

Argued June 26, 1975.

Decided July 6, 1976.

Rehearing Denied Feb. 16, 1977.

564

James F. Wildeman, James L. Crawford, Anthony J. Molloy, Jr., Asst. Attys. Gen., Pa. Labor Relations Bd., Harrisburg, for appellants.

William A. Whiteside, Jr., Philadelphia, for appellee, Albert Einstein Med. Ctr.

Peter Platten, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, for appellee, Temple University.

Jeffrey B. Albert, Philadelphia, for appellee, Phila. Assn. of Interns and Residents.

Bruce E. Endy, Philadelphia, David M. Rabban, N.Y. Bar, Scarsdale, N.Y., for amicus curiae, Physicians National Housestaff Assn.

Jerome H. Gerber, James L. Cowden, Handler, Gerber and Weinstock, Harrisburg, for amicus curiae, Pennsylvania AFL–CIO.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from an order of the Commonwealth Court which reversed the Pennsylvania Labor Relations Board and the Court of Common Pleas of Philadelphia, in which the two tribunals held that interns, residents and clinical-fellows, members of the Philadelphia

Association of Interns and Residents, one of the appellants herein, who perform services at the appellee-hospitals, are employees within the meaning of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563. No. 195, art. I, § 101, 43 P.S. § 1101.101, et seq., hereinafter called "Act 195".

Initially, we must point out that, in our opinion, the appellant-employees of Albert Einstein Medical Center and Albert Einstein Medical Center itself no longer come within the purview of Act 195, but rather are covered under the "Labor Management Relations Act, 1947", Act of June 23, 1947, c. 120, § 1, 61 Stat. 136, 29 U.S.C.A., § 141, et seq. (Labor Management Act). In 1947, when the Labor Management Act was amended to redefine the terms used therein, § 152, Definitions, read as follows:

"(2) The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or *political subdivision thereof, or any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder* or individual, or any person subject to the Railway Labor Act, as amended. . . ." (Emphasis supplied.)

Under the terms of § 152 of the Labor Management Act, excluded from the term "employer" was any private nonprofit hospital and any hospital run by the state. Albert Einstein Medical Center is a nonprofit private hospital, and, therefore, excluded from the term "employer" in the Labor Management Act. If Albert Einstein Medical Center is excluded under the Labor Management Act, its employees would, therefore, be eligible to organize under state labor relations legislation as the interns, residents and clinical-fellows (hereinafter called appellants) attempted to do in January, 1970, under Act 195. However, during the time that the personnel of Albert Ein-

stein Medical Center filed under Act 195 and the time this appeal arose, the Congress of the United States amended the Labor Management Act, § 152, Definitions, to read as follows:

"(1) The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers.

"(2) The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the *United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.*" (Emphasis supplied.)

Section 152 of the Labor Management Act, as amended in July of 1974, specially eliminated from its exclusion of defined employers, private nonprofit hospitals, such as appellee herein, Albert Einstein Medical Center; thus, on its face, § 152 of the Labor Management Act now includes as employers, hospitals such as appellee, Albert Einstein Medical Center. The legislative history surrounding the amendment of § 152 of the Labor Management Act reinforces the contention that private nonprofit hospitals are, since the 1974 amendment, covered by the Labor Relations Act. The legislative history clearly indicates § 152 was amended to bring within its purview employees of private, nonprofit hospitals. See 2 U.S. Code Cong. & Admin.News 1975, pp. 3946–3947.

■■ Since the amendment to § 152 of the Labor Management Relations Act was intended to include employers such as appellee, Albert Einstein Medical Center, and since this amendment pre-empts the field of labor

law regarding private nonprofit hospitals' employer-employee relationships, the issue of the status of the appellants who are employed at Albert Einstein Medical Center is now moot. Our decision as to the mootness of appellee Albert Einstein Medical Center in no way controls our decision on the issue of whether appellants who are at Temple Medical Center are employees within the meaning of Act 195, since this decision is purely a matter of state labor law.

■ We must now turn to the question of whether the interns, residents and clinical-fellows at Temple University Hospital are public employees within the meaning of Act 195. Since there is no dispute that Temple University is a public employer under § 301(1) of Act 195, 43 P. S. § 1101.301, we must look to see how Act 195, in § 301(2), 43 P.S. § 1101.301(2), defines public employee:

"(2) 'Public employe' or 'employe' means any individual employed by a public employer  . . . ."

This very broad definition in § 301(2) sheds little light on what constitutes a public employee. Nor does the scant case law surrounding Act 195. In *Sweet v. Pa. L. R. B.*, 457 Pa. 456, 322 A.2d 362 (1974), this court had its first opportunity to define who was an employer under Act 195, but did not define what is a public employee since in *Sweet* it was undisputed that the court personnel involved in the appeal were public employees.

In the instant case, the Pennsylvania Labor Relations Board and the Court of Common Pleas found the interns, residents and clinical-fellows of Temple University to be public employees within the meaning of Act 195 because of certain indicia of employee status. The two tribunals held that appellants were employees because (1) they spent eighty-five to ninety percent of their time in patient-care service, (2) they were paid wages that were subject to federal income tax, (3) only ten to fifteen percent of their time was spent in formal classroom instruc-

tion, and (4) that many other terms of their relationship with appellee Temple University carried indicia of employee status.

While accepting the findings of fact of the Pennsylvania Labor Relations Board, we, as did the Commonwealth Court, find that because of their unique position and status, appellants are not employees within the meaning of Act 195. The interns, residents and clinical-fellows at Temple University are at Temple not for the primary purpose of obtaining monetary remuneration, but rather to fulfill educational requirements. The interns are required by state law to serve a year of internship at an approved hospital in order to be admitted to the practice of medicine, which is, in essence, a fifth year of medical school. See "The Medical Practice Act of 1973," July 20, 1974, P.L. 551 No. 190, § 1, et seq., 63 P. S. § 421.1, et seq. and Title 49, Pennsylvania Code, § 17.-11(f).

The residents who are at hospitals such as Temple are medical doctors admitted to practice, but who wish to specialize in a certain field of medicine and be certified by the medical association as specialists. The residency requirement is an integral step in the obtaining of board certification as a specialist and, again, this training can only be obtained at an approved hospital, such as Temple. See Title 49, Pennsylvania Code, § 17.41.

Lastly, the clinical-fellows at Temple are residents who have fulfilled their residency requirements, but stay at hospitals such as Temple in order to obtain more training in their specialty and ultimately go on to teach or do research in the medical field. Again, a portion of their time is spent either receiving instruction, teaching or doing research, all designed to further the educational level of appellants.

In our opinion, while appellants herein are clothed with the indicia of employee status, the true nature of their reason for being at Temple University negates

their employee status. Appellants do not go to work at Temple in the true bargained-for exchange normally associated with the employer-employee relationship. Appellants are not primarily seeking monetary gain, but rather are attempting to fulfill educational requirements, either to initially practice medicine, or obtain certain specialties in the medical field. Moreover, appellants herein are not, because of certain medical board requirements, free to obtain this training from any hospital in the Commonwealth; appellants must work at a hospital approved as a teaching hospital, such as Temple. This again evidences that the general bargained-for exchange of the normal marketplace is absent in the instant case.

The National Labor Relations Board, in *Cedars-Sinai Medical Center and Cedars-Sinai Housestaff Association*, 223 NLRB No. 57, Case No. 31–RC 2983, 1975–76 CCH NLRB § 16,690 (decided March 19, 1976), in reviewing similar evidence concerning the activities of interns, residents and clinical fellows at Cedars-Sinai, held that:

".  .  . They participate in these programs not for the purpose of earning a living; instead they are there to pursue the graduate medical education that is a requirement for the practice of medicine. An internship is a requirement for the examination for licensing. And residency and fellowship programs are necessary to qualify for certification in specialties and subspecialties. While the housestaff spends a great percentage of their time in direct patient care, this is simply the means by which the learning process is carried out. It is only through this direct involvement with patients that the graduate medical student is able to acquire the necessary diagnostic skills and experience to practice his profession. The number of hours worked or the quality of the care rendered to the patients does not result in any change in monetary compensation paid to the housestaff members. The stipend remains fixed and it seems clear that the payments are more in the

nature of a living allowance than compensation for services rendered. Nor does it appear that those applying for such programs attached any great significance to the amount of the stipend. Rather their choice was based on the quality of the educational program and the opportunity for an extensive training experience. The programs themselves were designed not for the purpose of meeting the hospital's staffing requirements, but rather to allow the student to develop, in a hospital setting, the clinical judgment and the proficiency in clinical skills necessary to the practice of medicine in the area of his choice. . . ."

Lastly, we, as was the Commonwealth Court, are of the opinion that the spirit of Act 195 would not be served by allowing appellants to form a bargaining unit. Appellants do not comprise a group of persons who are attempting to establish a continuous relationship with appellee, but rather, after they have fulfilled their educational requirement in either one, two or three years, leave appellee-hospital for new areas of endeavor. See *Cedars-Sinai Medical Center, supra.*

Order of the Commonwealth Court is affirmed.

EAGEN, J., filed a concurring and dissenting opinion.

ROBERTS, J., filed a dissenting opinion.

MANDERINO, J., filed a dissenting opinion.

EAGEN, Justice (concurring and dissenting).

While I join in the ruling that the appeal is moot as to Albert Einstein Medical Center, I am compelled to dissent from the affirmance of the Commonwealth Court's order which reversed the Pennsylvania Labor Relations Board's [Hereinafter: PLRB] determination that interns, residents and clinical fellows were employes of Temple University. The majority of the Court utilizes an improper method of analysis, ignores the statutorily

mandated standard of review, fails to cite or discuss our prior decisions which have interpreted that standard of review, and incorrectly disposes of this appeal.

The majority reasons that interns, residents and clinical fellows at Temple are not employes because they entered into a relationship with Temple for the primary purpose of fulfilling educational requirements and not for monetary remuneration. Beyond question the subjective motivations of these individuals in entering into a relationship with Temple, i. e., to fulfill educational requirements, is the foundation of the ruling that they are not employes. Assuming that fulfilling educational requirements is the primary purpose of these individuals in entering into a relationship with Temple, the deficiency in the majority's reasoning is made clear by an examination of comparable situations. Are law clerks, apprentices and journeymen in trades, or, for that matter, any individuals, who enter a relationship, which has indicia of employe status, with the primary purpose of advancing their educational experience such that they may enlarge their knowledge or fulfill statutorily or otherwise mandated requirements to work in a certain capacity, any less employes because of their subjective motivations? Clearly, they are not. Moreover, reasoning that such subjective motivations preclude such individuals from being employes can lead to absurd results.

For instance, a person who wishes to become a certified public accountant must normally complete two years of employment in public accounting as a prerequisite to becoming certified. Act of December 30, 1974, P.L. 1122, No. 362, § 4, 63 P.S. § 9.4 (Supp.1976–77). Thus, under the reasoning employed by the majority, an accountant, who enters an employment relationship with a public accounting firm for the primary purpose of qualifying to become a certified public accountant by meeting a statutorily mandated requirement, would not be an employee of that firm. And while I do not think this Court

would ever reach such an absurd conclusion, under the reasoning employed in the majority opinion such a conclusion would necessarily follow.

Furthermore, if the primary purpose or subjective motivation of the individuals involved is the criterion for determining employe status, it follows that some interns, residents and clinical fellows, as. well as some accountants, may not be employes while others who are in the same relationship with a hospital or accounting firm may indeed by employes if they are more interested in monetary remuneration. Again, such a result is absurd.

The reasoning in the majority opinion finds support in *Cedar-Sinai Medical Center v. Cedar-Sinai Housestaff Association*, Case 31–RC–2983, 223 NLRB no. 57, 1975–76 CCH NLRB § 16,690 (1976). But the reasoning employed by the National Labor Relations Board [Hereinafter: NLRB] in that case is subject to the same criticism previously set forth. Moreover, the determination made by the NLRB is contrary to the weight of authority. *Regents of the University of Michigan v. Michigan Employment Relations Commission*, 389 Mich. 96, 204 N.W.2d 218 (1973); *Long Island College Hospital*, 33 S.L.R.B. (N.Y.1970) ; *Brooklyn Eye & Ear Hospital*, 32 S.L.R.B. 21 (N.Y.1968). Also and significantly, the Massachusetts Labor Relations Commission, the only tribunal to consider the issue subsequent to the NLRB's decision, discussed at length the NLRB's reasoning and rejected it. *Re: City of Cambridge and Cambridge Hospital House Officers Association*, No. MCR 2163. In doing so, the Massachusetts Commission relied on the weight of authority set forth above and on the reasoning of the dissenting opinion in *Cedar-Sinai*, supra. The Massachusetts Commission also considered the reasoning of the Commonwealth Court in this case and rejected it as unpersuasive.

The opinion of the majority also fails to make proper use of whatever guidance may be found in *Cedar-Sinai*,

supra. Since the PLRB, which is the comparable administrative agency to the NLRB, has made a determination contrary to *Cedar-Sinai,* supra, this Court is obligated to defer to the PLRB because of our standard of review, see Public Employe Relations Act, Act of July 23, 1970, P.L. 563, No. 195, art. XV, § 1502, 43 P.S. § 1101.1502 (Supp.1976–77) [Hereinafter: PERA], *Pennsylvania Labor Relations Board v. Kaufman Department Stores, Inc.,* 345 Pa. 398, 400, 29 A.2d 90 (1942) and *National Labor Relations Board v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), and is not at liberty to impose its own views merely because they are compatible with the NLRB's and incompatible with the PLRB's.

But before setting forth the proper standard of review and applying it to the facts of this appeal, the reasons for an appellate court's deference to the PLRB are apparently in need of reiteration. Whether or not an individual is in fact an employe and whether or not an individual is an employe within the meaning of the PERA are often very close questions. The PLRB is familiar with the numerous circumstances and backgrounds of employment relationships in different fields. *National Labor Relations Board v. Hearst Publications,* supra. Further, the PLRB because of this familiarity is in a better position to know when and where the purposes of the PERA will be served than is this Court or the Commonwealth Court. As such, deference to the PLRB is not only important, it is a necessity if the purposes and intent of the Legislature in enacting the PERA are to be advanced.

The majority says the purposes of the PERA will not be advanced by ruling that interns, residents and clinical fellows are employes within the PERA because these individuals have no continuous relationship with Temple. This ignores the fact, established in the record, that these individuals are involved in a substantial way in

providing essential services to the public. The uninterrupted flow of such services is undoubtedly one of the major purposes of the PERA. See generally, *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 23 Pa.Cmwlth. 229, 351 A.2d 304 (1976). The PLRB has undoubtedly determined that this purpose and possibly other purposes of the PERA will be advanced by ruling that these individuals, who otherwise are involved in a relationship which the majority recognizes as having indicia of employment status, are employes within the meaning of the PERA. But the present ruling of the majority will frustrate this purpose because the proper standard of review and deference to the expertise of the PLRB has been ignored.

I now turn to the proper standard of review in this case. In order to dispose of this appeal properly, the Court should review the record in order to make two determinations. First, does the evidence support the factual determination that these individuals are employes? Second, if these individuals are in fact employes, then are they employes within the meaning of the PERA? The first is a question of fact; the second is a legal determination involving statutory construction.

### THE QUESTION OF FACT

Art. XV, § 1502 of the PERA, 43 P.S. § 1101.1502 (Supp.1976–77), provides:

"[f]indings of the [PLRB] as to the facts, if supported by substantial and legally credible evidence . . . shall . . . be conclusive."

Moreover,

"[t]his means that it is the function of the [PLRB] not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from estab-

lished facts and circumstances. Upon judicial review, however, it is the duty of the court to determine whether the findings of the [PLRB] are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. . . . 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' 'Substantial evidence . . . must do more than create a suspicion of the existence of the fact to be established'. 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power'." [Citations omitted throughout.]

*Pennsylvania Labor Relations Board v. Kaufman Department Stores, Inc.,* supra at 400, 29 A.2d at 92 (1942). Thus, instantly, as in *Pennsylvania Labor Relations Board v. Kaufman Department Stores, Inc.,* supra, this Court's sole inquiry in regard to the factual findings should be whether the evidence produced justifies as reasonable and not capricious the conclusion of the PLRB that interns, residents and clinical fellows of Temple Hospital are employes.

Substantial evidence exists in the record to establish that these individuals spend eighty-five to ninety per cent of a work week performing care services and manning clinics and wards; that they are paid wages and pay federal taxes on their incomes; that they give priority to patient care service, rather than class attendance or the more formal aspects of their education; and, that they receive fringe benefits as do other employes. This evidence is substantial and thus can support findings of fact as to these matters and a conclusion from these findings that these individuals are in fact employes is clearly not capricious or unreasonable.

Moreover, the reasonableness of this determination is supported by the determinations made by other tribunals in dealing with this question. E. g., see generally, *Regents of the University of Michigan v. Michigan Employment Relations Commission,* supra; *Long Island College Hospital,* supra; *Brooklyn Eye & Ear Hospital,* supra.

Thus, while I think these individuals are also students for other purposes, see *Regents of the University of Michigan v. Michigan Employment Relations Commission,* supra, I cannot, given the evidence, the PLRB's determination, and the proper standard of review, find that they are not in fact also employes.

## THE QUESTION OF LAW

While I agree with the majority opinion when it states that the statutory definition of employe, art. III, Section 301(2) of the PERA, is extremely broad and thus requires interpretation, I do not agree that the subjective motivation or primary purpose of interns, residents and clinical fellows when entering into a relationship with Temple should determine whether they are employes. Such an analysis can lead to absurd results, see supra at 2, and fails to give adequate consideration to the purpose of the PERA, the determinations of the PLRB, and the objective circumstances surrounding the relationship, which, under the analysis set forth in the majority opinion, could be an employment relationship in all respects except for the subjective motivation of the employes.

In my view, the criteria to be applied are objective, that is, regardless of the individual's intention in entering into a relationship with a public employer, the question remains whether the objective circumstances incident to the relationship are such that the rights, privileges, and duties of the employer, individuals, and the public require the protections and procedures provided by the PERA. The application of these criteria requires

a consideration of the purposes of the PERA.[1]  A major purpose of the PERA is to provide a procedure for the settlement of labor disputes between public employers and their employes so that the public services on which the people depend will not be interrupted unnecessarily. See generally, *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* supra.  And although the question of whether the purpose or purposes of the PERA will be advanced by its application to certain circumstances and relationships is one of law, I think some degree of deference must be allotted to the PLRB in dealing with this question in specific circumstances.  As the Supreme Court of the United States stated in *National Labor Relations Board v. Hearst Publications,* supra at 130, 64 S.Ct. at 860:

> "Everyday experience in the administration of the statute gives it [here the PLRB] familiarity with the circumstances and backgrounds of employment relationships in various industries, with the abilities and needs of the workers for self organization and collective action, and with the adaptability of collective bargaining for the peaceful settlement of their disputes with employers.  The experience thus acquired must be brought frequently to bear on the question who is an employee under the Act.
>
> \*    \*    \*    \*    \*    \*    \*    \*

Hence in reviewing the Board's ultimate conclusions, it is not the court's function to substitute its own inferences of fact for the Board's, when the latter have support in the record.  Undoubtedly questions of statutory interpretation, especially when arising in the first instance in judicial proceedings, are for the courts to resolve, giving appropriate weight to the judgment of

1.  Art. I, Section 101 of the PERA, 43 P.S. 1101–101 (Supp.1975–76) sets forth the purposes of the PERA and those include:
    "establishing procedures to provide for the protection of the rights of the public employe, the public employer and the *public at large*."  [Emphasis added.]

those whose special duty is to administer the questioned statute. But where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited. . . . [T]he Board's determination that specified persons are 'employees' under this Act is to be accepted if it has 'warrant in the record' and a reasonable basis in law." [Citations omitted throughout.]

And see, *Pennsylvania Labor Relations Board v. Sand's Restaurant Corporation*, 429 Pa. 479, 240 A.2d 801 (1968); *Pennsylvania Labor Relations Board v. Butz*, 411 Pa. 360, 192 A.2d 707 (1963); *American Federation of State, County and Municipal Employees, AFL–CIO v. Pennsylvania Labor Relations Board*, 17 Pa.Cmwlth. 83, 330 A.2d 300 (1975).

In making its determination that these individuals were employes within the PERA, the PLRB has apparently determined that a dispute between these interns, residents and clinical fellows and their employer could substantially disrupt public service. This determination has support in the record in that these individuals provide services to the public during most of the work week. Thus, the PLRB's determination that they are employes within the purview of the PERA has "warrant in the record" and has a "reasonable basis in law." Since these individuals are factually employes and, as such, are within the express terms of the statute and since they are involved in a relationship which if disrupted by labor disputes could result in the frustration of an express purpose of the PERA, I believe that the PLRB's determination should be sustained.

Moreover, even if this Court were to review the question as one of law without granting a degree of deference to the judgment of the PLRB, I would not be prepared to say that, given the broad statutory definition of employe

in the PERA and its purposes, these individuals are not within its purview since they are in a position of providing basic public service, the noninterrupted flow of which is a paramount consideration of the PERA, and since they are involved in a relationship with the hospital that exhibits so many of the traditional characteristics of employment.

I dissent.

ROBERTS, Justice (dissenting).

I cannot agree that the interns, residents and clinical-fellows of Temple University Hospital (appellants) are not "employees" within the meaning of section 301 of the Public Employee Relations Act (PERA).[1]

In my view, the majority makes at least three errors: (1) it misperceives the role of appellate courts in reviewing actions of the Pennsylvania Labor Relations Board (PLRB); (2) it inaccurately characterizes the role of interns, residents and clinical-fellows in the operation of the hospital; and (3) it subverts the legislative purpose embodied in the PERA. I dissent and would reverse the order of the Commonwealth Court and reinstate the order of the PLRB.

I

The Pennsylvania Labor Relations Board, in its order and notice of election dated April 28, 1972, found that in-

1. Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. §§ 1101.101 et seq. (Supp.1975). Section 301(2) provides:
   " 'Public employe' or 'employe' means any individual employed by a public employer but shall not include elected officials, appointees of the Governor with the advice and consent of the Senate as required by law, management level employes, confidential employes, clergymen or other persons in a religious profession, employes or personnel at church offices or facilities when utilized primarily for religious purposes and those employes covered under the act of June 24, 1968 (Act No. 111), entitled 'An act specifically authorizing collective bargaining between policemen and firemen and their public employers; providing for arbitration in order to settle disputes, and requiring compliance with collective bargaining agreements and findings of arbitrators.' "

terns, residents and clinical-fellows are employees within the meaning of the PERA. This conclusion of law was affirmed on May 12, 1972, by the Board in its Nisi Order of Certification. The Board's findings of fact and conclusions of law were entered after hearings pursuant to the PERA, a statute whose administration is entrusted to the Board.[2] The court of common pleas, after hearing, dismissed the appeal from the order of the Board.

A further appeal was taken to the Commonwealth Court which, by a divided court, reversed the order of the court of common pleas and the Board. The four judge majority (Blatt, Mencer, and Rodgers, JJ., dissenting) there stated: "[W]hen the record is read and viewed in its entirety, it is abundantly clear that PAIR [Philadelphia Association of Interns and Residents] members cannot be considered employees under PERA. The student aspect of the affiliation is paramount." The majority here, in affirming that determination by the Commonwealth Court, has misperceived the role of the appellate courts in reviewing actions of the PLRB.

In *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, 345 Pa. 398, 400, 29 A.2d 90, 92 (1942), this Court held:

"[I]t is the function of the board not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances. . . . Upon judicial review . . . it is the duty of the court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statutes and whether the conclusions deduced therefrom are reasonable and not capricious." (citations omitted).

2. Act of July 23, 1970, P.L. 563, No. 195, art. V, § 501, 43 P.S. § 1101.501 (Supp.1975).

This limited scope of appellate review correctly acknowledges the expertise of the Board which deals continuously with these matters. It also recognizes the ability of the Board to weigh the particular facts in the context of the language and intent of our labor relations statutes. Because of the singular nature of the problems presented in this area of the law, courts ought to give great weight to the Board's finding and conclusions. This, the majority here, and the Commonwealth Court, have failed to do. Both have fallen into the same error of viewing their appellate function as fact finding. It is not the reviewing court's function to substitute its judgment, as the Commonwealth Court and the majority here have done, for that of the Board in making findings of fact.

In this regard, it is useful to look to the decisions of the United States Supreme Court construing analogous provisions of the federal labor laws.[3] In *National Labor Relations Board v. Hearst Publications*, 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944), a case deciding that newspaperboys were employees under the National Labor Relations Act, the Court gave great deference to the NLRB's determination:

"Everyday experience in the administration of the statute gives it familiarity with the circumstances and backgrounds of employment relationships in various industries, with the abilities and needs of the workers for self organization and collective action, and with the adaptability of collective bargaining for the peaceful settlement of their disputes with their employers. The experience thus acquired must be brought fre-

---

3. See, e. g., *Costigan v. Philadelphia Finance Dept.*, 462 Pa. 425, 432 n. 7, 341 A.2d 456, 460 n. 7 (1975); *Board of Education of the School District of Philadelphia v. Pennsylvania Fed. of Teachers*, 458 Pa. 342, 327 A.2d 47 (1974); cf. *PLRB v. State College Area School Dist.*, 461 Pa. 494, 337 A.2d 262 (1975).

quently to bear on the question who is an employee under the Act.

.    .    .    .    .    .    .    .

"Hence in reviewing the Board's ultimate conclusions, it is not the court's function to substitute its own inferences of fact for the Board's, when the latter have support in the record. Undoubtedly questions of statutory interpretation, especially when arising in the first instance in judicial proceedings, are for the courts to resolve, giving appropriate weight to the judgment of those whose special duty is to administer the questioned statute. But where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited.  .  .  .  [T]he Board's determination that specified persons are 'employees' under this Act is to be accepted if it has 'warrant in the record' and a reasonable basis in law." (citations omitted).

Surely there is no reason for the majority to approach these matters in a manner different than our federal counterparts. This Court's decision in *Kaufman's* parallels the sound federal policy, and the rule there announced should be followed here. Since the Board's determination that appellants are employees under the Act has support in the record, that determination here, as in *Kaufman's* and *Hearst Publishing,* is to be accepted. In light of the reviewing court's limited function there is no adequate ground for the majority's interference with the Board's order.

## II

Even if this Court were free—which it is not—to ignore the role of the Board and make an independent evaluation of the evidence, I would nevertheless conclude that the interns, residents and clinical-fellows of Temple

University Hospital are employees within the meaning of section 301 of the PERA. I base this conclusion on the nature of their salaried affiliation with the hospital and on the purpose of the Act.

The record indicates that appellants spend at least 80% of their sixty or seventy hour work weeks caring for patients. They receive salaries, based on length of past service, of between $10,000 and $20,000. They receive all benefits other hospital employees receive. The Board found that only 10–15% of appellants' work weeks were spent in formal educational activities. This evidence was adequate for the Board to conclude that appellants are employees.

The majority performs a curious equivocation. The findings of fact of the Board are accepted, as indeed they must be, yet the majority concludes, "while appellants herein are *clothed with the indicia of employee status,* the true nature of their reason for being at Temple University negates their employee status." (emphasis added). Plainly, the governing issue here is whether they are employees not their reasons for obtaining such employment. Their reason for obtaining employment is an irrelevant consideration. Our task is not to create exceptions to the broad statutory definition of an "employee" based on what are urged to be distinctions in employment motivation.

The majority accepts the findings of fact of the Board. Having done so, this controversy is decided. It is clear that the statutory definition "any individual employed by a public employer" contains no exclusion for this category of employees. Neither the Commonwealth Court nor this Court is justified in creating one. The interns, residents and clinical-fellows receive remuneration, pay wage-related taxes and receive typical employee benefits. Moreover, the hospital, regardless of whether it characterizes itself as a teaching hospital or a treating hospital, operates a health facility which renders a service to the

public and receives payment from the recipients of its services. The service it renders is administered, in significant part, through appellants who are paid in excess of $10,000 for their services by the hospital, just as all other hospital employees receive wages or salaries from the hospital.

The requirement that appellants must fulfill a period of such employment before being licensed by the state or qualifying as specialists may perhaps be relevant in collective bargaining between the employer and the employee representative and may affect the administration of a collective bargaining agreement. However, it does not contravene their employee status. Furthermore, that the individuals here may sometimes be referred to as students does not alter their status as salaried employees. It is also of little consequence that the duration of appellants' employment may be for periods of one to five years.

Our role is to consider the statutory language and the purpose of the Act in light of the established facts. This process unmistakably leads to the conclusion that interns, residents and clinical-fellows are employees. To hold otherwise in the face of the conceded and established facts, which include almost every traditional indicia of employment status, would be to judicially create exceptions which the Legislature did not. The only exceptions to the definition of employee in the PERA are for elected officials, certain appointees of the Governor, management level employees, confidential employees, firemen and police.[4]

The conclusion that appellants are employees under the PERA finds strong support in other jurisdictions. In two states the question has been decided by the courts, *Regents of the University of Michigan v. Michigan Employment Relations Commission*, 389 Mich. 96, 204 N.W.

4. See n. 1, supra.

2d 218 (1973); *Long Island College Hospital,* 33 S.L.R.
B. 32 (N.Y.1970); *Brooklyn Eye and Ear Hospital,* 32
S.L.R.B. 21 (N.Y.1968). Five other states extend collec-
tive bargaining rights to hospital professionals by stat-
ute: Massachusetts, Minnesota, Oregon, Connecticut and
New Jersey. Moreover, insofar as the National Labor
Relations Act applies to private non-profit hospitals it
appears that there is recognition of the employee status
of residents, interns and clinical-fellows. Cf. Senate Re-
port No. 93–766, 93d Cong.2d Sess., at 6.

In my view the facts presented to the Board clearly
justify, and may perhaps mandate, the conclusion that
this class of salaried professionals is within the statutory
definition of employees.

## III

That appellants are employees finds additional strong
support when considered in the context of the entirety of
the Public Employee Relations Act. Although it is neces-
sary to consider the meaning of employee in terms of the
usual indicia of that status, it is especially relevant to
consider the statutory term in light of the purpose of
this particular Act. Indeed, as Judge Learned Hand said
in *NLRB v. Federbush Co., Inc.,* 121 F.2d 954, 957 (2d
Cir. 1941):

"Words are not pebbles in alien juxtaposition; they
have only a communal existence; and not only does the
meaning of each interpenetrate the other, but all in
their aggregate take their purport from the setting in
which they are used . . . ."

For this reason I do not find it helpful to consider the
precise meaning of employee under various other statutes
which were directed to different objectives.[5] We are

5. The Commonwealth Court, in its analysis, considered the defini-
   tions of "employee" as determined in cases arising under the Vet-
   erans' Education Assistance Act of 1966, the Fair Labor Stan-

only concerned with whether appellants are "employees" within the meaning of the PERA. Helpful in that determination is the Act's purpose.

Section 101 of the PERA provides, in part:

"The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. . . . the General Assembly has determined that the overall policy may best be accomplished by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe, the public employer and the public at large."

This statement of policy is the reiteration of the lessons of recent history. Though the relationship between those who manage a public enterprise and those who labor in its behalf is fraught with potential for conflict,

dards Act, the Pennsylvania Workmen's Compensation Act, and federal tax laws.

The precise meaning of a term used in a particular act is related to the purpose of the Act. Compare, for example, the different meanings of "bankruptcy" under the Federal Bankruptcy Act and in the traditional equity sense. It is fruitless to consider a word's meaning in a vacuum. Cf. *Costigan v. Philadelphia Finance Dept.*, supra n. 3.

yet it is a relationship which affects the rest of society so directly that a continuing means of conflict avoidance and resolution must be devised. Collective bargaining in public employment, as set forth in the PERA, is the method chosen by the Legislature, "to make appropriate collective action of employees an instrument of peace rather than of strife." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 34, 57 S.Ct. 615, 622, 81 L.Ed. 893 (1937).

It cannot be doubted that the citizens of this Commonwealth have a legitimate interest in the smooth operation of health care institutions. Nor can it be doubted, based on this record, that the interns, residents and clinical-fellows of Temple University Hospital provide services necessary to the normal treatment of patients in the hospital. It is clear to me that the relationship of these young professionals to the hospital administration can spawn problems of the type embraced in the public policy objectives of this Act. It is equally clear that the Legislature has provided, by the terms of the PERA, a means for the resolution of these differences, and has created only limited, specific exceptions to this definition of employee. The Legislature has not excluded this class of employees. It is difficult indeed to understand on what basis the majority ignores the Board's findings and independently concludes that this class of people, vested with the usual and typical employee status, should be excluded from the provisions of the PERA based on an unarticulated policy judgment that an employee with some student status should not be able to deal with his employer in the manner which the Legislature has deemed most desirable.

I would reverse the order of the Commonwealth Court, reinstate the order of the Board that interns, residents and clinical-fellows are employees under the Act, and remand for determination of the proper bargaining unit.

MANDERINO, Justice (dissenting).

I join in the dissenting opinion of Mr. Justice Eagen concerning the disposition of this case regarding Temple University Hospital. I must also, however, dissent from the majority's ruling concerning the Albert Einstein Medical Center. A valid election was held at the direction of the Pennsylvania Labor Relations Board, and the Philadelphia Association of Interns and Residents was elected the bargaining agent for the interns, residents and clinical fellows. The matter should not be moot because the Commonwealth Court made an erroneous decision reversing the order of the Pennsylvania Labor Relations Board. The Albert Einstein Medical Center is entitled to the same disposition as is Temple University Hospital. Whether the federal amendment relied on by the majority has the effect of invalidating the Pennsylvania Labor Relations Board's order is an issue which cannot properly be determined without an analysis of the retroactive effect of that amendment—an issue not considered by the majority opinion.