Columbia, Snyder, Montour, Union Mental
Health/Mental Retardation Program, Petitioner
*v.* Commonwealth of Pennsylvania, Pennsylvania
Labor Relations Board, Pennsylvania Social Ser-
vices Union, Local 686, SEIU, AFL-CIO and Com-
monwealth of Pennsylvania, Respondents.

Argued January 31, 1978, before President Judge
BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR.,
MENCER, ROGERS, BLATT and DiSALLE.

*Edward H. Feege,* with him *Hayes and Feege,* P.C.,
and, of counsel, *Robert L. Marks,* and *Marks & Wag-
ner,* for petitioner.

*Stephen A. Sheller, Robert F. Beck,* Assistant At-
torney General, and *Larry Rapport,* with them *James
L. Crawford, Forest N. Myers,* and *Bruce M. Ludwig,*
for respondents.

OPINION BY JUDGE WILKINSON, JR., March 13, 1978:
Respondent Pennsylvania Labor Relations Board
(Board) dismissed petitioner's exceptions to a nisi

order designating Pennsylvania Social Services Union (PSSU) as the exclusive representative of a bargaining unit comprised of petitioner's professional and non-professional employees. Petitioner alleges in this appeal that the Board erred in deciding that: (1) the fact that the Commonwealth, through the Department of Public Welfare (Department), makes reimbursement of petitioner's program contingent upon petitioner's adherence to Department regulations is insufficient to cause the Commonwealth to be considered a "joint employer"; (2) an employee whose duties included direction of paid student interns was not a "management level employe" or "supervisor"[1] and, therefore, was to be included within the bargaining unit; (3) another employee whose responsibilities may have given her access to financial data was not a "confidential employe"[2] and, therefore, was also to be included within the bargaining unit; and (4) the certification of PSSU as the exclusive representative of the bargaining unit was proper even though only eight of 21 employees deemed eligible to vote actually did so. After careful consideration of the close questions presented, we are required to affirm the Board on all issues.

In January 1976, PSSU alleged that it represented 30% or more of certain employees of petitioner and filed a petition for representation and a request for a representation election order with the Board. Included within the employees on whose behalf the petition was filed were the two employees petitioner alleged to be respectively a "confidential employe" and a "management level employe" or "supervisor." A.

---

[1] As defined respectively in Section 301(6) and (16) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §1101.301(6) and (16).

[2] As defined in Section 301(13) of the PERA, 43 P.S. §1101.301 (13).

hearing on the status of the Commonwealth as a joint employer and the designations of the two employees was conducted in April 1976. The only witness was petitioner's administrator.

On the joint-employer question, the administrator testified that, pursuant to agreement, the Department reimburses petitioner for 90% of all expenses (not otherwise funded) for the performance of the duties imposed on the counties by the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §4101 et seq. The 90% funding is made contingent upon petitioner's compliance with Department regulations. Operating authority over petitioner rests with the commissioners of the four counties, who in turn delegate some aspects of their authority to an advisory board, the membership of which is appointed by the counties after the Department prescribes the categories of appointments. Petitioner's employees are supervised by superiors within the program, rather than the Department, and are paid through an account maintained in petitioner's name. The regulations provide that the Department can change the amount of reimbursement at any time (dependent upon the availability of funds) and require, *inter alia*, that petitioner submit annual program plans and budgets for Department approval, undergo Department audits, and apply Department interpretations of Civil Service Commission standards in making decisions as to personnel classification, layoff and discipline. Petitioner must receive Department approval prior to staffing proposed positions and hiring particular applicants recommended by petitioner's supervisors from mandatory civil service lists. The administrator testified that he has been instructed by the county commissioners not to fill any proposed position for which the Department will not participate in

funding. He testified further that employee compensation, fringe benefits, length of work week and overtime are kept within Department maximums but petitioner can exceed those maximums at its own expense. He acknowledged that similar programs in other counties have different wages, hours, working conditions and other terms and conditions of employment and said such differences could be attributed to differences in local administration.

The administrator testified that the alleged managerial or supervisory employee is assigned for approximately 50% of her time to a student intern program, in which students are employed for a year (part-time during the school year and full-time during the summer or other non-school periods) through their educational institutions. They perform essentially the same work as regular staff members. The employee in question develops the intern program, interviews the students, makes hiring decisions and assignments, and monitors the students' progress through periodic reports and occasional personal visits to various agency locations. She is responsible for overseeing whatever discipline of the students is necessary and has made the final decision to discharge at least one student. Her responsibilities for the preparation of the intern budget are similar to responsibilities of three employees stipulated to be supervisors. Along with the administrator and the three supervisors, she is considered a member of petitioner's "senior staff" and in that capacity routinely attends meetings at which policy recommendations are made. Unlike the three supervisors, however, her only supervisory duties relate to the student interns and not to regular staff.

As to the alleged "confidential employe," the administrator testified that a transfer was being made after which she would perform "a variety of secre-

tarial duties" within the fiscal department. Her new job would permit her access to personnel records and fiscal information relevant for purposes of collective bargaining. This information would include budgets, proposed allocation of funds toward petitioner's programs, salaries, and memoranda concerning proposed salary increments to specific employees. He also said that the employee would be aware of this information in advance of its being made known to the union.

On July 6, 1976, the Board ruled that petitioner was the sole employer of the employees within the named bargaining unit and that both of the contested employees were to be included in the unit. It directed that a secret-ballot election be held to determine whether PSSU would be certified as the exclusive representative of the bargaining unit and whether eligible professional employees wished to be included within the unit with non-professionals. Notice was given and the election was held as ordered on July 22, 1976, at times and locations previously agreed upon by counsel for petitioner and PSSU.

In the unit determination election, only three of 14 eligible professional employees cast ballots, of which one favored a unit of professional employees only, one favored a unit of both professionals and non-professionals, and one was challenged. Four ballots were cast by the professionals in the representation election, of which two favored PSSU, one favored no representative, and one was challenged. The challenged ballot was cast by the employee alleged to be a manager or supervisor. Four ballots were cast among seven eligible non-professionals, of which three favored representation by PSSU and one, cast by the alleged "confidential employee," was challenged.

A hearing was conducted on August 11, 1976, to determine the validity of the challenged ballot cast in

the two professional-employee elections.[3] At this hearing, counsel for petitioner was permitted by the Board hearing examiner to present testimony of petitioner's policy director as to why 13 of the 21 employees failed to vote. According to the policy director, whose testimony was based upon hearsay conversations, three of the professional employees were out of town on vacation when the election took place, four professionals, who worked part-time for petitioner, were employed at their regular places of employment, and another was home because of family responsibilities. Two of the non-professionals (a husband and wife) were off-duty and out of the area, and another non-professional had family commitments. The policy director stated that employees are permitted to take vacations at any time with prior approval and those on vacation would have been permitted to vote.

Based upon its previous ruling, the Board determined that the ballot of the employee alleged to be a manager or supervisor had been invalidly challenged. It was subsequently found to have been cast in favor of a unit of both professionals and non-professionals and in favor of representation by PSSU. This made the final ballot total in the representation election six in favor of representation by PSSU, one in favor of no representative, and one challenged. The Board then issued its nisi order of certification designating PSSU as the exclusive representative of the bargaining unit. The Board's final order dismissing petitioner's exceptions followed.

In *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 462, 322 A.2d 362, 365 (1974), our Supreme Court held that an employer-employee relation-

---

[3] It was agreed that the validity of the ballot cast by the employee alleged to be a "confidential employee" (who is a non-professional) did not have to be determined since it would have no effect on the result of the representation election of the non-professional employees.

ship exists within the context of labor relations "when a party has the right to select the employe, the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done." Here the record clearly supports the Board's conclusion that these criteria are met solely by the petitioner. Petitioner is free, of course, to administer its own program if it chooses to reject Department funding, but even upon acceptance of such funding petitioner is bound by regulations which set forth only general guidelines and minimum standards. Within those guidelines and standards petitioner makes all decisions required for employer status under the *Sweet* tests, and it may exceed those standards at any time it wishes. It is not bound by Department maximums as to compensation benefits, and other items negotiable through collective bargaining. Indeed, the testimony shows that similar programs in other counties have differences in wages, hours, and other terms and conditions of employment attributable to differences in local administration.

In his able brief, counsel for petitioner cites the decision of our Supreme Court in *Costigan v. Philadelphia Finance Department Employees Local 696,* 462 Pa. 425, 341 A.2d 456 (1975). There the Register of Wills of Philadelphia claimed that the City of Philadelphia (City) was a joint employer, as one ground for an injunction against arbitration pursuant to a collective bargaining agreement entered into by his predecessor. The Register of Wills enjoyed the exclusive power to hire, fire, promote and direct the work of the employees, while the City paid "most of the salaries and other compensation costs of the office and exercise[d] considerable control over the fringe benefits accorded the employees. . . ." *Id.* at 434, 341 A.2d at 461. Since these benefits included "several key benefits not included in the budget of

the Register of Wills[,]" which "constitute[d] an important term of the employment and [were] a proper subject for collective bargaining," the Supreme Court held that the City exercised independent control over the collective bargaining process and, therefore, had to be deemed a joint employer. *Id.* at 435 n. 8, 341 A.2d at 461 n. 8. Here, in contrast, the record is void of any benefits or other compensation which are provided by the Department outside those included within petitioner's budget. Rather, as the record expressly shows, it is the petitioner which may, if it chooses, offer compensation or benefits in excess of those provided by the Department.

We must next consider whether the Board erred in its ruling that the employee alleged by petitioner to be a "supervisor" or "management level employe" comes within neither of those classifications. To be considered a "supervisor," as the term is defined in Section 301(6) of PERA, an individual must be given authority over other employees. Here, the employee had authority only over student interns, who, although paid by petitioner and responsible for duties similar to those of regular staff members, cannot be considered "employees" under the rule set forth by our Supreme Court in *Philadelphia Ass'n of Interns and Residents v. Albert Einstein Medical Center*, 470 Pa. 562, 369 A.2d 711 (1976). There, interns, residents, and clinical-fellows at Temple University, who were paid for patient-care services which occupied 85 to 90% of their time, were barred from forming a bargaining unit because, as stated by Justice O'BRIEN,

> while appellants herein are clothed with the indicia of employee status, the true nature of their reason for being at Temple University negates their employee status. Appellants do not go to work at Temple in the true bargained-for exchange normally associated with the em-

ployer-employee relationship. Appellants are not primarily seeking monetary gain, but rather are attempting to fulfill educational requirements. . . .

*Id.* at 568-69, 369 A.2d at 714.

In addition, the Supreme Court rejected the group's claim because its members were not "attempting to establish a continuous relationship with appellee, but rather, after they have fulfilled their educational requirement . . . leave appellee-hospital for new areas of endeavor." *Id.* at 570, 369 A.2d at 715. Both rationales are clearly applicable to the students here and negate petitioner's allegation that the employee who directs them is a "supervisor." As defined in Section 301(16) of the PERA, a "management level employe" is "any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof and shall include all employes above the first level of supervision." Though petitioner places emphasis on the fact that the employee in question routinely participates in recommending policy in meetings of the "senior staff," the record shows that such meetings are open to non-supervisors as well as supervisors, and that often non-supervisors share in making recommendations as to specific programs such as the student intern program. We cannot say, therefore, that the Board erred in finding the employee eligible for membership within the bargaining unit.

The third issue presented in this appeal is whether the Board erred in finding that the other employee in question was not a "confidential employe," which, as defined in Section 301(13) of the PERA,

> shall mean any employe who works: (i) in the personnel offices of a public employer and has access to information subject to use by the public employer in collective bargaining; or (ii) in

a close continuing relationship with public officers or representatives associated with collective bargaining on behalf of the employer.

The testimony by petitioner's administrator shows that the employee enjoyed no access to information subject to use by the employer in collective bargaining prior to the date of the hearing in April 1976. Even after her pending transfer into her new position within petitioner's fiscal department she would have access to no information relevant to collective bargaining which could be considered outside the "public record." The duties of this employee can be distinguished from those of the payroll clerk in *Pennsylvania Labor Relations Board v. Altoona Area School District*, 23 Pa. Commonwealth Ct. 445, 352 A.2d 560 (1976), where apparently the clerk had access to information not within the "public record." Nor can we find any evidence that the employee here had or would have the "close continuing relationship" with petitioner's officers or collective bargaining representatives, as required for the second test of Section 301(13).

The final question before us is whether the Board erred in refusing to set aside the election of July 22, 1976. As noted earlier in this opinion, the date, times and locations of the election were agreed upon by counsel for petitioner and the PSSU, and notice was given as ordered by the Board. Under Section 605(3) of the PERA, 43 P.S. §1101.605(3), "[a] representative may not be certified unless it receives a majority of the valid ballots cast." Here the PSSU received such a majority. The record shows that all employees were given the opportunity to vote and, even accepting as competent the hearsay testimony of petitioner's policy director, those who failed to vote did so because of reasons personal to them or related to other employment. As petitioner's counsel frankly admits, his argument that a low turnout, without more, is suffi-

cient grounds upon which to set aside an election is a novel one. Under the circumstances we can find no justification for reversing the Board.

Accordingly, we will enter the following

ORDER

Now, March 13, 1978, the Final Order of the Pennsylvania Labor Relations Board in Case No. PERA-R-7626-C, dated January 21, 1977, is hereby affirmed.