UNIVERSITY HOSPITAL, UNIVERSITY OF CINCINNATI COLLEGE OF MEDICINE, APPELLEE, *v.* STATE EMPLOYMENT RELATIONS BOARD ET AL., APPELLANTS.

[Cite as *Univ. Hosp., Univ. of Cincinnati College of Medicine. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339.]

(No. 90–2286—Submitted December 3, 1991—Decided April 1, 1992.)

*Wood & Lamping, Paul R. Berninger* and *Mark R. Fitch,* for appellee.

*Lee I. Fisher,* Attorney General, and *Joseph M. Oser,* for appellant State Employment Relations Board.

*Lynch, Cox, Gilman & Mahan* and *Susan J. Hauck,* for appellant House Staff Association.

SWEENEY, J.

## I

The hearing officer whose findings were adopted by SERB determined that the house officers were not students excluded from the operation of the Public Employees' Collective Bargaining Act pursuant to R.C. 4117.01(C)(11). A preliminary issue concerns the nature of this determination. The appellate court, while concluding that such determinations are questions of fact, nevertheless held that the trial court's reversal of the order did not constitute an abuse-of-discretion. Although conceding that SERB's order was supported by substantial evidence, the court concluded the abuse-of-discretion standard of review dictated affirmance of the judgment of the common pleas court.

R.C. 4117.13(D) governs appeals of SERB's orders to courts of common pleas. It provides in relevant part:

"Any person aggrieved by any final order of the board granting or denying, in whole or in part, the relief sought may appeal to the court of common pleas of any county where the unfair labor practice in question was alleged to have been engaged in, or where the person resides or transacts business, by filing in the court a notice of appeal setting forth the order appealed from and the grounds of appeal * * *.

"The court has exclusive jurisdiction to grant the temporary relief or restraining order it considers proper, and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the board. *The findings of the board as to the facts, if supported by substantial evidence on the record as a whole, are conclusive.*" (Emphasis added.)

In *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260, 533 N.E.2d 264, 266, this court described the extremely deferential standard of review applied to factual determinations of SERB pursuant to R.C. 4117.13(D). We observed therein that disputes as to conflicting evidence " * * * are properly determined by SERB, which was designated by the General Assembly to facilitate an amicable, comprehensive, effective labor-management relationship between public employees and employers. *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44, v. State Emp. Relations Bd.* (1986), 22 Ohio St.3d 1, 5, 22 OBR 1, 4, 488 N.E.2d 181, 184–185. As long as SERB's decision on such matters is supported by substantial evidence, it must be affirmed. Courts should not be required to intervene in every factual dispute between contesting parties."

When undertaking a review of an order of adjudication rendered by an administrative agency, a court of common pleas acts in a limited appellate capacity. See, generally, *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 279–280, 58 O.O. 51, 53–54, 131 N.E.2d 390, 393–394.

Accordingly, while resolution of conflicting evidence is the province of SERB, the determination of whether the order of the agency can withstand the standard of review prescribed by R.C. 4117.13(D) is essentially a question of law for the court of common pleas. As such, a reviewing court which seeks to ascertain whether the common pleas court has applied the appropriate standard of review to SERB's factual findings is not compelled to adhere to the conclusion reached by the common pleas court. Rather, it is the prerogative and the responsibility of the court entertaining the appeal to investigate whether the lower court accorded due deference to the factfinder. This is not unlike the function performed by this court in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273, and in *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407, and prescribed by R.C. 119.12 for courts of appeals.[3] Where the common pleas

---

3. Thus, R.C. 119.12 provides in relevant part:

"The judgment of the court [of common pleas] shall be final and conclusive unless reversed, vacated, or modified on appeal. Such appeals may be taken either by the party or the agency, shall proceed as in the case of appeals in civil actions, and shall be pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the

court has not properly deferred to the factual determinations of the agency as required by R.C. 4117.13(D), it is within the authority of the appellate court to reverse the lower court and reinstate the order of the agency.

We therefore hold that the conclusion by a court of common pleas that an order of the State Employment Relations Board is not supported by substantial evidence on the record is a legal determination fully reviewable by the court of appeals.

## II

Inasmuch as R.C. 4117.13(D) is the appropriate standard of review, the trial court committed an error of law if it reversed SERB's order despite substantial evidence in the record to support the order. Perusal of the relevant facts leaves little doubt that there was sufficient evidence to support SERB's determination. It was the conclusion of the hearing officer that the primary purpose of the house officers was not educational training but rather patient care. Depending upon the reference point, seventy-five percent (based on testimony) or ninety-five percent (based on documentary evidence) of house officers' work time was devoted to patient care. The officers were paid regular salary and benefits for which the hospital charged and/or received reimbursement from Medicare. The officers had completed medical school and had received their medical degrees. They derived no academic credit for their activities and were not registered as students with the university.

Moreover, the definition of "students" in R.C. 4117.01(C)(11) describes them, *inter alia,* as "residents, interns or *other* students working as part-time public employees less than fifty per cent of the normal year in the employee's bargaining unit[.]" (Emphasis added.) It is beyond dispute that the house officers devote at minimum seventy-five percent of their time to patient care. Appellee nevertheless contends that the house officers are the residents and interns to which R.C. 4117.01(C)(11) refers. This contention is without merit.

---

Revised Code. Such appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, *and in such appeal the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record.*" (Emphasis added.)

This standard would obviously apply to appeals of final orders of adjudication rendered by SERB inasmuch as R.C. 4117.02(M) provides:

"Except as otherwise specifically provided in this section, *the board is subject to Chapter 119. of the Revised Code,* including the procedure for submission of proposed rules to the general assembly for legislative review under division (H) of section 119.03 of the Revised Code." (Emphasis added.) See *Ohio Historical Society v. State Emp. Relations Bd.* (1990), 48 Ohio St.3d 45, 46, 549 N.E.2d 157, 158; *South Community, Inc. v. State Emp. Relations Bd.* (1988), 38 Ohio St.3d 224, 527 N.E.2d 864.

Instead, the reference is more logically applicable to medical students who perform clinical duties during their tenure in medical school. However, assuming *arguendo* that such terms apply to house officers, it would be applicable only to those persons who spend less than fifty percent of their time in the bargaining unit. The performance of patient care for seventy-five to ninety-five percent of an eighty-hour week can scarcely be considered part-time employment under the statute.

We therefore further conclude that physicians in the employ of a hospital constituting a "public employer" as defined by R.C. 4117.01(B) who have been awarded their medical degrees but whose provision of care to hospital patients is necessary to obtain state certification in a specialty or subspecialty in medicine are public employees for purposes of R.C. Chapter 4117. Such employees are not "students" exempt from the operation of the Act pursuant to R.C. 4117.01(C)(11).

Inasmuch as there was substantial evidence to support SERB's order, the trial court erred *as a matter of law* by failing to affirm an order based on such evidence.

III

As an independent basis for its order, SERB determined that the Association was an organization "deemed certified" under Section 4(A) of Am.Sub. S.B. No. 133 inasmuch as it was the preexisting bargaining representative of the house officers. The court of appeals concluded that the Association was not entitled to such status because, in its view, the reference to an "employee organization" in Section 4(A) requires application of the definition thereof in R.C. 4117.01(D). The appellate court further determined that, inasmuch as the officers were not public employees under R.C. 4117.01(C), they could not form an "employee organization" as defined in R.C. 4117.01(D). This determination is erroneous. Section 4(A) specifically provides for the grandfathering of existing bargaining representatives "[n]otwithstanding any other provision of this act." Accordingly, reference to R.C. 4117.01(D) to determine what constitutes a preexisting employee organization is at odds with the plain language of Section 4(A).

Moreover, Section 4(A) of Am.Sub.S.B. No. 133 was effective on October 6, 1983. R.C. 4117.01(D) was not effective until April 1, 1984. It is anomalous to suggest that a section of the law can derive its meaning from a definition which was not in existence on its effective date. Therefore, an independent basis for affirmance of SERB's determination is that the Association constitutes an organization "deemed certified" pursuant to Section 4(A) of Am.Sub. S.B. No. 133.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to SERB for reinstatement of its order.

*Judgment reversed
and cause remanded.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. In its continuing attempt to encompass even more persons within the definition of "public employee" for the purpose of the collective bargaining laws of Ohio, the majority misinterprets the specific exemptions of R.C. 4117.01(C). The status of the employees in this case under a reasonable interpretation of the exemption is that of students in training in order to qualify for the exacting standards of their chosen profession, not public employees.

Accordingly, I agree with the dissent herein of Justice Wright.

WRIGHT, J., dissenting. The majority's decision to contort the language of R.C. 4117.01(C) in order to place medical residents within the category of public employees is, at best, disturbing. For that reason and those that follow, I must respectfully dissent.

R.C. 4117.01(C) clearly and specifically excludes residents and interns from the definition of "public employee." To reiterate, the statute excepts from the definition of "public employee" those "[s]tudents whose primary purpose is educational training, including graduate assistants or associates, residents, interns, *or* other students working as part-time public employees less than fifty per cent of the normal year in the employee's bargaining unit[.]" (Emphasis added.) R.C. 4117.01(C)(11). A proper reading of the statute places the phrase "students whose primary purpose is educational training * * *" on the same level as "other students working as part-time public employees * * *." No other interpretation is possible unless the emphasized "or" is construed as an "and."

Although under certain circumstances the word "or" in a statute may be read as "and," the words are not interchangeable when their accurate and literal meaning does not render the sense of a statute ambiguous, and when such interpretation would do violence to the intent and purpose of the lawmakers. *In re Estate of Marrs* (1952), 158 Ohio St. 95, 99, 48 O.O. 46, 47–48, 107 N.E.2d 148, 150. " * * * [T]he fact that the terms of the legislative enactment when given their literal meaning may prove onerous in some instances is not sufficient to warrant a court * * * [to] arbitrarily chang[e]

plain and unambiguous language employed by the legislative body in the enactment." *Id.*

In spite of the clarity of the statute and our prior case law concerning the interpretation of coordinating conjunctions, the majority has seen fit to read the statute such that the "or" is interpreted as an "and." That interpretation results in the majority's conclusion that any resident employed by a state-funded hospital who is engaged in the care of patients for more than fifty percent of the time he or she is working at the hospital is, as a matter of fact and law, a public employee.

In order to accept that position, one has to assume that the General Assembly intended to exempt from the classification of public employee only those residents and interns who spend less than half their time in the care of patients. Such a reading is illogical, and it swallows whole the exception for residents carved out by the General Assembly. Residents are not employed for the primary purpose of obtaining monetary renumeration; they are employed to fulfill educational requirements necessary for the practice of medicine. Although residents are engaged approximately ninety percent of their time in the clinical aspects of their education, *i.e.*, in patient care, and are paid wages, the General Assembly did not intend that they be considered public employees for purposes of SERB jurisdiction. Accord *Philadelphia Assn. of Interns & Residents v. Albert Einstein Medical Ctr.* (1976), 470 Pa. 562, 369 A.2d 711.

There are several important policy reasons supporting the conclusion that the majority's interpretation is in error. As recognized by SERB's federal private-sector counterpart, the National Labor Relations Board ("NLRB"), in *St. Clare's Hosp. & Health Ctr.* (1977), 229 N.L.R.B. 1000, medical interns and residents are "primarily students," although interns and residents possess certain employee characteristics. "[Indeed] the mutual interests of the students [residents and interns] and the educational institution [the hospital] in the services being rendered are predominantly academic rather than economic in nature. Such interests are completely foreign to the normal employment relationship and * * * are not readily adaptable to the collective-bargaining process. * * *" *Id.* at 1002. Furthermore, "* * * there exists a grave danger that it [collective bargaining] may unduly infringe upon traditional academic freedoms. * * *" *Id.* at 1003.

As the NLRB noted, "* * * the teacher and student [resident or intern] have a mutual interest in the advancement of the student's education. Such mutuality of goals rarely exists in the typical employment relationship, and goes far towards explaining why collective bargaining can flourish in one sphere while constituting an anathema in the other." *Id.* at 1002–1003. For

those reasons, the NLRB concluded that " * * * extending bargaining privileges to residents, interns, and fellows would not be in the best interest of national labor policy. * * * " *Id.* at 1003. For these reasons, I do not believe that it would be in the best interest of enlightened labor policy to construe the statute in question in such a manner that residents and interns are public employees to whom collective bargaining privileges are extended. Accordingly, I would affirm the judgment of the court of appeals.

MOYER, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.