OPINION
Plaintiff-appellant, Paul R. Collier, Jr., appeals the decision of the Harrison County Court of Common Pleas affirming the decision of the State Personnel Board of Review (SPBR) upholding the removal of appellant as a deputy county auditor with defendant-appellee, the Harrison County Auditor.
Appellee employed appellant from 1990 through January 2, 1997 as a deputy auditor. Appellant's duties included tax assessment, data processing, waiting on customers, and filling out different forms and kinds of licenses. During the 1996 primary election for the Harrison County Commissioner, appellant supported the auditor's, Patrick Moore's (Moore), brother-in-law's opponent. Appellant alleges that this led to differences of opinion between himself and Moore.
In 1996, appellant and Samuel Taylor (Taylor), another employee, carried out procedures for the pay-in forms for county fees. The pay-ins were for conveyance and transfer fees and dog license and dog kennel fees. The procedure for the pay-ins involved filling out a slip and then depositing the cash and checks with the Harrison County Treasurer. Deposits usually occurred on the fifteenth and thirtieth of every month. For the dog and kennel (DK) pay-ins, the deposits were made after 100 tags were sold. The pay-ins were placed in the DK box, which treated cash and checks the same. During working hours, the box was kept on a file cabinet and during off hours, the box was kept in a safe.
Occasionally, appellant, Taylor, and possibly other employees, would place personal checks made out to cash or to the Harrison County Auditor in the DK box and remove cash in an equal amount. Moore testified that he was not aware that his staff cashed personal checks in the DK box until mid-September 1996. His office then issued a policy prohibiting the cashing in mid-November 1996. Between June 19, 1996 and October 10, 1996, appellant cashed eleven checks in the DK box ranging from $5 to $150. All of the checks except one, check #1302 for $150, cleared appellant's checking account. Regarding check #1302, appellant testified that he was not aware whether the check cleared his account. Appellant also did not recall placing the check in the DK box; but, he did not recall that he did not do so. The other checks cleared appellant's account within three months to one week after being placed in the DK box.
Appellant testified that he was unaware whether the checks cleared his account or not. Appellant stated that he used a home computer package that provided the aggregate amount of outstanding checks but did not identify a single check that may be outstanding. However, appellant received statements from his credit union that identified which checks had cleared his account. Thus, the information was available to him.
According to appellant's testimony, he never looked to see whether anyone removed his checks from the DK box. In addition, he testified that he never asked Taylor to hold his checks from deposit. However, Taylor testified that appellant asked him on three or four occasions not to deposit his checks because he did not have the funds to cover them. Taylor complied with his request. Taylor initially did not report this to Moore, but eventually he did so. Taylor could not recall the exact dates but remembered that they were Fridays. Appellant testified that he had an overdraft protection for his account up to $500 and, thus, sufficient funds were available to cover the checks.
Appellant received a memo from Moore titled "Questions Regarding Public Money." Question two provided, "[i]t has come to my attention that there were personal checks found underneath the DK box drawer that were written by you. Fully explain why these were kept separate from the actual monies in the box, and why they were not redeemed with the other pay-ins." (ALJ Report 6). Appellant answered, "I don't know." (ALJ Report 6). Appellant explained that the box had a drawer inside and under the drawer receipts from county treasurer and coin wrappers were placed. He also stated that no monies were placed under the drawer.
When Mark J. Soos (Soos), Chief Deputy Auditor, testified regarding question two in the above memo he stated, "[r]egarding question #2, [appellant] couldn't commit [sic.] much on the checks. He stated that it was easier to cash checks in the DK box rather than to cash them at the Treasurer's Off. He had no idea that the checks were hidden underneath the drawer. He didn't know how that could have happened." (ALJ Report 12). In addition, Soos stated that appellant was dumbfounded when asked about the checks.
While a summer employee was preparing a pay-in, she discovered that she needed additional money to reconcile the DK box. While in Moore's presence, she found eight of appellant's checks under the cash drawer. The eight checks equaled the amount of money she needed to reconcile the DK box. The Harrison County Prosecutor's Office copied the eight checks and placed the originals back in the drawer without notifying appellant.
Moore testified that appellant "had been guilty of theft in office through kiting checks, writing checks in June, 1996 and July, and holding these checks until September, securing for himself a free unauthorized loan of county monies." (ALJ Report 13). Moore testified that he no longer trusted appellant and feared that appellant would graduate to larger crimes. He further testified that he did not discipline Taylor because the events had occurred two and a half years earlier but stated that his policies changed from that point.
Additionally, appellant operated a side business. The business involved securing raw data from the auditor's office and placing the data in a report that realtors in the area could use. The report included a list sale price, property type, lot size, and room count. Appellant sold the reports for $30.00 per month. Appellant obtained his information from public records.
Appellant paid $4 to the Harrison County Auditor for copies made of the November 1996 conveyance forms for his business. Appellant testified that the auditor's office charged fifty cents per page. Appellant testified that he made more than eight copies of the November, 1996 information but paid $4 for them, the amount subscribers pay for the monthly service offered by the auditor for copies of these documents. After November, appellant hand copied the information during his lunch hour or on Saturdays. Appellant gained access to the public records on Saturdays since he had a key; however, the public did not have access to the records on Saturdays. Moore testified that appellant was competing with the auditor's office and thus appellant was in a conflict of interest with the auditor.
On January 3, 1997, appellee terminated appellant as an unclassified employee. Appellant appealed his termination to the SPBR. On August 31, 1998, the SPBR found appellant was employed as a classified civil service employee and disaffirmed his termination. The SPBR found that appellee did not follow the procedures for terminating a classified civil service employee as provided for in R.C. 124.34. Appellee appealed the disaffirmance to the Franklin County Court of Common Pleas, which affirmed the order.
After a pre-disciplinary conference, appellee again terminated appellant on October 1, 1998 based on an R.C. 124.34 order. The order provided:
 "Throughout 1996, you placed personal checks in the cash box of the Auditor's Office in which these checks remained in the cash box and not deposited for extensive periods of time. Further, during the year of 1996 and other times, you made copies of information of real estate conveyances and related information and offered to sell and/or sold this information to members of the public. This effort was done while on county time and/or with county resources."
Appellant appealed the order. On May 4, 1999, the ALJ issued a report affirming the termination. The ALJ held that appellee had proven by a preponderance of the evidence that the factual allegations of misconduct were sufficiently serious to warrant a disciplinary action, up to and including removal.
Appellant filed objections but the SPBR adopted the ALJ's decision on June 17, 1999. Appellant then appealed the SPBR's decision to the Harrison County Court of Common Pleas. The court, in two one-sentence entries filed June 12 and 21, 2000, affirmed the decision with no reasons provided. On July 11, 2000 appellant filed an appeal to this court.
Appellant did not provide this court with the complete record of the SPBR proceedings and the trial court's transcript. For this reason, we affirmed the lower court's decision. However, appellant filed a motion for reconsideration, which we granted on April 30, 2002. Thus, we now consider the merits of appellant's appeal.
In the case of removal for disciplinary reasons, a classified civil servant can appeal from the decision of the SPBR to the court of common pleas of the county in which the employee resides. Davis v. StatePersonnel Bd. of Rev. (1980), 64 Ohio St.2d 102, syllabus; R.C. 124.34(B). The decision is appealable pursuant to and in accordance with the procedure provided by R.C. 119.12. Pitts v. Dept. of Transp. (1981),67 Ohio St.2d 378, paragraph two of the syllabus; R.C. 124.34(B). When reviewing an order of an administrative agency in a R.C. 119.12 appeal, the common pleas court is bound to affirm the agency's order "if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. The common pleas court "`must give due deference to the administrative resolution of evidentiary conflicts'" and, therefore, must not substitute its judgment for that of the administrative agency.Hawkins v. Marion Corr. Inst. (1990), 62 Ohio App.3d 863, 870, quotingUniv. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111.
Once the court of common pleas has rendered judgment on the appeal, the employee may appeal further to the court of appeals. R.C. 119.12. On appeal from the trial court's review of the agency's order, an appellate court's review is more limited, and is restricted to whether the trial court abused its discretion in determining that the agency's order is or is not supported by reliable, probative, and substantial evidence.Kennedy v. Marion Correctional Inst. (1994), 69 Ohio St.3d 20, 21-22. An abuse of discretion connotes that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. In addition, as opposed to an abuse of discretion standard employed for issues of fact, an appellate court conducts a de novo review on issues of law. Univ. Hosp., Univ. ofCincinnati College of Medicine v. State Emp. Relations Bd. (1992),63 Ohio St.3d 339.
Appellant's first assignment of error states:
 "THE ALJ ERRED BY AFFIRMING MR. COLLIER'S TERMINATION BECAUSE THE AUDITOR FAILED TO PROVE THAT MR. COLLIER INTENTIONALLY CONCEALED THE CHECKS HE WROTE. (5/4/99 RR)."
Appellant argues that the ALJ relied upon "extremely flimsy" circumstantial evidence and upon conclusory statements by Taylor, which the evidence does not support. According to appellant, he denied ever telling Taylor not to deposit the checks. Appellant notes that Taylor's statement does not make sense for several reasons. First, appellant argues that he had proof in his banking statements that he always had money to cover the checks (except for two days in September 1996 which were after the checks were written). In addition, appellant states that a letter from his credit union shows that he never had a check returned and he also had overdraft protection. Appellant states that based on the banking documents he had no reason to tell Taylor to hold the checks.
The ALJ found that the presence of the accounting system was irrelevant because appellant received monthly checking statements that listed the checks presented for payment. Therefore, appellant was made aware that his checks in the DK box were not deposited. Furthermore, the ALJ found that appellant benefited from an "interest free loan." The ALJ did not take into account the overdraft protection and funds in appellant's account stating that these facts were immaterial to the benefit appellant enjoyed of unauthorized, no interest loans.
Second, appellant argues that Taylor's statement should be reviewed in light of the subsequent actions that took place. Appellant argues that Taylor did not report that appellant asked him not to cash his checks when he allegedly made these requests. Appellant also notes that Taylor was not disciplined. Appellant argues that Taylor was a long-term employee getting ready to retire and did not want to adversely affect his employment.
The ALJ found Taylor's testimony to be "credible both in content and the manner in which this testimony was presented." (ALJ Report 19). He further found Taylor's testimony to be "credible and worthy of substantial weight." (ALJ Report 20). The ALJ also found that Taylor's testimony was believable and that it proved that appellant "purposefully delayed the deposit of personal checks to his own advantage. The purposefulness of such misconduct reflect[ed] failure of good behavior and dishonesty, and provide[d], in [the ALJ's] opinion, sufficient grounds to affirm the removal of the appellant." (ALJ Report 20). The ALJ heard the testimony of both Taylor and appellant and because these statements were conflicting concerning whether appellant requested Taylor to hold the checks or not, the trial court was entitled to defer to the findings made by the ALJ. The ALJ had a chance to evaluate the credibility of each witness and he found Taylor to be more credible. The trial court must give due deference to the ALJ's resolution of evidentiary conflicts.Conrad, 63 Ohio St.2d at 11. Moreover, "when the evidence before the court consists of conflicting testimony of approximately equal weight the court should defer to the determination of the administrative body, which, as the fact-finder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility." Id.
In addition, the ALJ based his decision on additional evidence before him. The ALJ stated:
"Mr. Taylor's testimony, however, abetted by the checking account information provided to the appellant monthly by Empire Affiliates Credit Union, discloses that the appellant did purposefully maintain certain of his checks in the DK box so they would not be deposited shortly after they were cashed. The fact that the checks were found under the cash drawer coincides with the purpose of the appellant to delay the deposit of these checks. Other than the appellant's contention that he did notplace these checks under the cash drawer, all other evidence in therecord, by a preponderance, indicates that he did." (Emphasis added.) (ALJ Report 20-21).
Appellant further argues that when confronted about how the checks could have been placed under the drawer, Soos described his demeanor as "dumbfounded." He claims that he was obviously surprised so could not have been deceiving anyone. Appellant argues that the reason he was dumbfounded was that he had a record keeping system so he could not have discovered the issue with the checks.
In his conclusions of law, the ALJ did not mention the "dumbfounded" statement. Even if Soos found appellant to be dumbfounded, he is not a finder of fact to determine appellant's credibility. Hence, his observation does not carry substantial weight.
Appellant finally argues that no witnesses saw him place checks under the drawer. However, appellee was not required to present a witness who saw appellant place the checks under the drawer. The evidence presented was sufficient so that the factfinder could infer that appellant placed the checks under the drawer. Thus, the trial court did not abuse its discretion in affirming the SPBR's decision.
Accordingly, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE ALJ ERRED BY FAILING TO APPLY THE DOCTRINE OF LACHES WHICH BARS ALLEGATIONS OF MISCONDUCT BASED UPON CASHING CHECKS AND ALLEGEDLY CONCEALING THEM. (5/4/99 RR)."
"Laches occurs when unreasonable and inexcusable delay in asserting a known right causes material prejudice." State ex rel. Carver v. Hull
(1994), 70 Ohio St.3d 570, 577. Laches is defined "`as a doctrine providing a party with an equitable defense where long-neglected rights are sought to be enforced against the party. Laches signifies an undue lapse of time in enforcing a right of action, and negligence in failing to act more promptly.'" Brown v. Ohio Bur. of Emp. Servs. (1996),114 Ohio App.3d 85, 91, quoting Barron's Law Dictionary (3 Ed. 1991) 266-267.
Ohio Adm. Code 124-3-04(A) provides that "[e]mployees shall not be disciplined for acts which have been known or should have been known to the appointing authority more than two years prior to issuance of a `section 124.34 order.'" In Martin v. Franklin Cty. Sheriff's Dept. (June 25, 1991), 10th Dist. Nos. 90AP-1342 and 90AP-1343, the court of appeals found that the rule contemplates a standard of reasonableness. The two year period provided "embodies the concept of reasonableness such that the appointing authority has the opportunity to explain why its disciplinary action was taken more than two years after the conduct giving rise to the discipline occurred." Id. For a claim of laches to be sustained, the claimant has to show "`that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting the claim.'" State ex rel. Madden v. WindhamExempted Village School Dist. Bd. of Edu. (1989), 42 Ohio St.3d 86, 90, quoting Smith v. Smith (1959), 168 Ohio St. 447, paragraph three of the syllabus.
The elements of laches are, "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." State ex rel. Cater v. N. Olmsted (1994),69 Ohio St.3d 315, 325.
Appellant argues that he wrote the checks in June, July, August, and September of 1996, and the checks cleared the account on September 18, 1996. The ALJ found that appellee served the R.C. 124.34 order on appellant on September 29, 1998, over two years later. Appellant argues that appellee was aware of the allegation for over two years. Therefore, appellant contends that appellee was aware of everything but took no action until September 1998. Appellant argues that he suffered prejudice as a result because the events were difficult to reconstruct and memories were clouded. Other than this statement, appellant has not provided any evidence of material prejudice to him.
Appellee discovered the checks in September of 1996 and took action within two years. Appellee terminated appellant as an unclassified employee in January of 1997. However, appellant appealed and it was determined that he was a classified employee.
The ALJ found:
 "[c]onsidering the appellant was a discharged employee (as an unclassified employee) from January 3, 1997 through August 31, 1998, and that the order of removal issued very shortly (within thirty days) after the State Personnel Board of Review found the appellant to be employed within the classified service, the undersigned recommends that the State Personnel Board of Review find that latches [sic.], Ohio Administrative Code Rule 124-3-04, does not stand in the way of disciplinary action which has been proven warranted under proven factual allegations within the order of removal issued to the appellant. This is not a case where the appointing authority waited two years before taking action." (ALJ Report 24-25).
Appellee did initiate an action upon the discovery of the allegation. The delay resulted from the determination of appellant's status as a classified or unclassified employee. Appellee did not unreasonably delay the action. Appellee had an excuse for the delay because the action was filed under the wrong status. Furthermore, there was no prejudice to appellant because he knew all along of the allegation against him and he could have obtained the evidence he needed to defend himself. Accordingly, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE ALJ ERRED BY NOT DISAFFIRMING MR. COLLIER'S TERMINATION ON ALLEGATIONS RELATED TO THE SIDE BUSINESS BECAUSE MR. COLLIER DID NOT USE COUNTY RESOURCES FOR HIS OWN PERSONAL GAIN. (5/4/99 RR)."
Appellant argues that the ALJ incorrectly concluded that he abused his county position. Appellant argues that he compiled the information for his side business during lunch hours and on Saturdays. Further, appellant argues that the ALJ did not recognize that the $4 he paid was for a $4 pamphlet that he purchased to start his business and after that he mostly compiled the information he needed by hand.
The ALJ did not find the conflict of interest claim to be supported by evidence. The ALJ found, however, that appellant was guilty of using county time and resources, "occasionally, to secure the information he was selling through his private business." (ALJ Report 21). The ALJ found that appellant made more than eight copies and did not pay for them. The ALJ also found that appellant's extra privilege allowed him to use his position to gain access to information during non-working hours, which he intended to sell for profit. The ALJ noted that members of the public did not have access to the Harrison County Auditor's Office during non-working hours to pursue similar activity.
Hence, based on the evidence and the ALJ's findings, we cannot say that the trial court abused its discretion. Accordingly, appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 "THE ALJ ERRED BY FAILING TO STRIKE/EXCLUDE EVIDENCE RELATED TO A CONFLICT OF INTEREST BECAUSE THIS ALLEGATION WAS NOT STATED IN THE § 124.34 ORDER NOR IDENTIFIED IN THE AUDITOR'S RESPONSE TO THE MOTION TO MAKE DEFINITE AND CERTAIN. (Transcript at 309-325)."
Appellant argues that appellee has altered his reasons for appellant's discharge throughout the process. Appellant claims that appellee first stated that appellant was gathering information during lunch hours, then stated that his business was in direct conflict with appellee and there was an appearance of impropriety and appellant was in a unique position to gather information. Appellant asserts that there was nothing in the R.C. 124.34 order about the conflict of interest claim and requests that we dismiss the evidence regarding this claim.
Appellant was not prejudiced because the ALJ found that appellee did not present a preponderance of the evidence to show that appellant's business was a conflict of interest with its business. Thus, appellant's argument does not affect the outcome of the decision.
Accordingly, appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error states:
 "THE ALJ ERRED BY IGNORING THE ANIMOSITY BETWEEN THE PARTIES WHICH REVEALS THAT THE DECISION TO TERMINATE THE APPELLANT WAS OVERLY HARSH AND ASSUMING ARGUENDO DISCIPLINE WAS APPROPRIATE, IT SHOULD HAVE BEEN REDUCED TO SOME SANCTION LESS THAN TERMINATION. (5/4/99 RR)."
Appellant argues he had a good work record and that he was never reprimanded. Appellant claims that appellee was upset because of the political candidate that appellant supported in the county commissioner's race. Appellant argues that the ALJ could have reduced the severity of the discipline. In Steinbacher v. Louis (1987), 36 Ohio App.3d 68, 70, the court of appeals after finding the needed authority in R.C. 124.03(A) stated that "the board has authority to independently review the evidence and determine whether the removal was necessary or improper." The court stated that the board, upon a proper review of all the factors affecting the appointing authority's removal order, has the authority to accept the adjudication, but may modify the punishment. Id., quoting Maiden v.Fayette Cty. Bd. Of Retardation (1984), 16 Ohio App.3d 196, 199-200. Hence, since the ALJ did not find the factors warranting a reduction of the discipline, this court cannot substitute its judgment unless the facts do not support the decision. The ALJ found that "the purposefulness of such misconduct reflects failure of good behavior and dishonesty and provides on the undersigned's opinion, sufficient grounds to affirm the removal of the Appellant." (ALJ Report 20).
Further, appellant claims that appellee should treat similarly situated employees similarly and that appellee did not discipline Taylor for failing to report the checks. Appellant and Taylor were not similarly situated. Appellant allegedly was involved in check kiting and using county time and resources for his own gain. Taylor was not. Hence the discipline cannot be of equal magnitude.
Accordingly, appellant's fifth assignment of error is without merit.
Appellant's sixth assignment of error states:
 "THE ALJ ERRED BY NOT ALLOWING MR. COLLIER TO INQUIRE AS TO LEGAL ADVICE SUPPOSEDLY SOUGHT AND RECEIVED BY AUDITOR MOORE."
Appellee sought legal advice on how to handle appellant's situation. Appellant claims that appellee should have revealed the advice it received so that appellant could determine whether appellee followed the advice. The ALJ sustained appellee's objection to the request for the information. Whether appellee followed the advice or not has no bearing on the case. The issue here is not any advice given, but the ALJ's and trial court's decisions and the facts presented.
Accordingly, appellant's sixth assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs