DECISION
In these two cases, consolidated for purposes of administrative hearing and appeals, appellants, Spitzer Motors of Elyria, Inc. ("Spitzer Motors") and Alan Spitzer, appeal from the judgment of the Franklin County Court of Common Pleas in favor of appellee, Toyota Motor Sales, USA, Inc. ("Toyota USA").
The undisputed evidence and the hearing officers findings of fact demonstrate the following. Spitzer Motors began operating a Toyota automobile dealership in Elyria in 1976, when it entered into a dealer agreement with Toyota Motors. Spitzer Motors has always been owned by various members of the Spitzer family. The original dealer agreement indicated that Adelbert ("Del") Spitzer (Alan Spitzer's uncle) and John Spitzer (Alan Spitzer's father) were each 50 percent owners. In subsequent communications throughout the 1980s and 1990s, Spitzer Motors represented to Toyota USA that Del Spitzer was the 51 percent owner and John Spitzer was the 49 percent owner of the dealership. This ownership structure was reflected on the dealer agreements through 1999, even though other members of the Spitzer family shared in the ownership of Spitzer Motors at various times in the 1980s and 1990s.
Toyota USA was not notified about any changes in ownership structure until June 1998. On June 12, 1998, a Spitzer Toyota representative informed Toyota USA that Alan Spitzer was the 100 percent owner of Spitzer Toyota. By letter dated October 21, 1998, Toyota USA General Manager Michael Reding informed Del Spitzer that Toyota USA had learned that several ownership and management changes had occurred at Spitzer Toyota without Toyota USA's knowledge or consent. Reding stated that Spitzer Toyota's dealer agreement provided for immediate termination for any attempted or actual sale, transfer or assignment of the agreement without prior written approval from the distributor. Reding further stated that, although Toyota USA believed that Spitzer Toyota was in breach of several provisions of the dealer agreement, Toyota USA was, nonetheless, willing to entertain an application for change in ownership in favor of Alan Spitzer and, to that end, it requested specific documentation from Spitzer Toyota.
On November 20, 1998, Alan Spitzer submitted an application to Toyota USA in which he requested a transfer of a controlling interest in the dealership. By letter dated January 18, 1999, Michael Reding informed Alan Spitzer that his application package was significantly incomplete. Additional documentation was requested by Toyota USA and supplied by or on behalf of Alan Spitzer over the next several months. By letter dated July 30, 1999, however, Toyota USA notified Alan Spitzer that it intended to terminate the dealership. Toyota never expressly denied Alan Spitzer's application for transfer, although it takes the position that the notice of termination of the dealership also served to apprise Spitzer that his application had been rejected.
On October 29, 1999, Alan Spitzer and Spitzer Motors each filed a protest with the Motor Vehicle Dealers Board of Ohio. In the first protest, Alan Spitzer asserted that Toyota USA failed to comply with the statutory requirements pertaining to the application to transfer the controlling interest in Spitzer Motors to Alan Spitzer. In the second protest, Spitzer Toyota asserted that Toyota USA unlawfully terminated the dealership without good cause.
With regard to the application to transfer the controlling interest in Spitzer Motors to Alan Spitzer, the hearing examiner concluded that Toyota USA violated R.C. 4517.56 because it failed to timely provide Alan Spitzer with notice of Toyota USA's refusal to approve the transfer and the objective criteria which Spitzer failed to meet. The hearing examiner therefore recommended that the board sustain Alan Spitzer's protest.
With regard to termination, the hearing examiner concluded that Toyota USA had good cause to terminate the Spitzer Motors dealership. Among other things, the hearing examiner found that Toyota USA demonstrated that Spitzer Motors had fallen below performance expectations in car and truck sales from 1994 to 1999, and that Spitzer Toyota ranked in the bottom four out of 118 dealerships in the region in the areas of car sales efficiency. The hearing examiner also found that Spitzer Toyota demonstrated that, at the time of the hearing, Spitzer Motors did not have a general manager, as required by the dealer agreement. The hearing examiner further found that Spitzer Toyota failed to meet customer sales satisfaction and service satisfaction standards from 1994 to 1999, and that, in 1999, Spitzer Toyota ranked 116 in the area of sales satisfaction and 117 in the area of service satisfaction out of the 118 dealers in the region. According to the hearing examiner, Spitzer Toyota had made relatively minimal investment in and incurred relatively minimal obligation in the dealership, and that the public interest would best be served by terminating the dealership. The hearing examiner therefore recommended that the board deny Spitzer Motor's protest.
On October 16, 2000, the motor vehicle dealers board adopted the recommendations of the hearing examiner, and an appeal to the Franklin County Court of Common Pleas ensued. The court of common pleas affirmed in part and reversed in part the order of the motor vehicle dealer board. The trial court concluded that Toyota USA had good cause to terminate the dealership and, accordingly, the court affirmed the motor vehicle dealer board's order concerning the protest on the issue of termination. With regard to the issue of transfer of the dealership to Alan Spitzer, the trial court concluded that "Alan Spitzer knew perfectly well why the application process was delayed and why he was ultimately rejected" and that, even if Toyota USA failed to comply with the statute pertaining to transfer, Alan Spitzer suffered no prejudice. Accordingly, the trial court reversed the board's order concerning the protest on the issue of transfer.
Appellants now raise the following assignments of error:
 Assignment of Error No. 1: The Common Pleas Court, acting as the reviewing court, failed to give due deference to the administrative resolution of evidentiary conflicts.
 Assignment of Error No. 2: The Spitzer Motors Protest Was Rendered Moot As A Matter Of Law By The Decision Sustaining The Alan Spitzer Protest.
 Assignment of Error No. 3: Toyota-USA Failed To Carry Its Burden Of Proving "Good Cause" for Termination.
In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews the agency's order to determine whether it is supported by reliable, probative and substantial evidence and is in accordance with the law. To some extent, this standard of review permits the court of common pleas to substitute its judgment for that of the administrative agency. The court must, however, "give due deference to the administrative resolution of evidentiary conflicts." Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111.
On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination that the agency's order is or is not supported by the requisite quantum of evidence, the appellate court's role is limited to determining whether the court of common pleas abused its discretion. Hartzog v. Ohio State Univ. (1985),27 Ohio App.3d 214, 216. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. On the question of whether the administrative agency's order was in accordance with the law, the court of appeals' review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, 334.
As an initial matter, we note that Toyota USA has filed a motion to dismiss, arguing that this appeal is moot and barred by the doctrine of res judicata. We deny the motion to dismiss and consider the merits of the appeal.
We address appellants' first two assignments of error simultaneously, as they both pertain to the issue of whether Toyota USA failed to comply with R.C. 4517.56, which governs the procedure for transfer of a motor vehicle dealership. Appellants argue that, in reversing the decision of the motor vehicle dealer board, the trial court erroneously failed to give due deference to the board's findings of fact. Appellants further argue that the issue of termination of the dealership should be moot because Toyota USA failed to lawfully process Alan Spitzer's transfer application.
We conclude that R.C. 4517.56 does not apply to this matter. R.C.4517.56 provides in pertinent part as follows:
 (A) If the sale or transfer of the business and assets or all or a controlling interest in the capital stock of a new motor vehicle dealer contemplates or is conditioned upon a continuation of the franchise relationship with the franchisor, and the proposed transferee has indicated a willingness to comply with all of the requirements of the franchise then in effect, the franchisee shall notify the franchisor of such intention by written notice setting forth the prospective transferee's name and address and the names and addresses of the transferee's prospective management personnel. The franchisee and prospective transferee shall also supply the franchisor with such other information regarding the transferee's character, business experience, and financial ability as may be reasonably requested by the franchisor to enable it to evaluate the transferee's qualifications and ability to comply with the requirements of the franchise then in effect. The franchisor shall evaluate the prospective transferee and the transferee's prospective management personnel on the basis of reasonable and objective criteria fairly and objectively applied.
 (B) The franchisor shall provide the franchisee and the prospective transferee with written notice by certified mail of any refusal to approve a sale or transfer of the business and assets or all other business and assets or a controlling interest in the capital stock of a new motor vehicle dealer within thirty days of receipt of the written notice advising of the proposed transfer. The notice shall specify the objective criteria used to evaluate the prospective transferee and the criteria which the transferee failed to meet.
 (C) Within ninety days after receipt of a notice of refusal as provided by division (B) of this section, the franchisee or prospective transferee may file a protest with the board against the franchisor's failure to approve the proposed sale or transfer. When such a protest has been filed, the board shall inform the franchisor that a timely protest has been filed and that a hearing is required pursuant to section 4517.57 of the Revised Code. [Emphasis added.]
 By its plain language, R.C. 4517.56 governs the procedure for the transfer of a controlling interest to a prospective transferee. In the instant matter, a Spitzer Toyota representative informed Toyota USA that Alan Spitzer was the 100 percent owner of Spitzer Toyota after the transfer in ownership had already taken place. Consequently, when Alan Spitzer submitted his purported application for transfer of a controlling interest in the dealership in November 1998, he was no longer a proposed transferee of a controlling interest, as contemplated by R.C. 4517.56. Because he was not a proposed transferee, the procedural requirements imposed by the statute do not apply. Accordingly, we conclude that, as a matter of law, the protest filed by Alan Spitzer on the issue of transfer of the dealership should have been denied, although for different reasons than those relied on by the trial court. We overrule appellants' first and second assignments of error.
By their third assignment of error, appellants argue that Toyota USA failed to carry its burden of proving good cause for terminating the Spitzer Motors dealership.
R.C. 4517.54 provides in pertinent part as follows:
 (A) Notwithstanding the terms, provisions, or conditions of an existing franchise, no franchisor shall terminate or fail to continue or renew a franchise except for good cause. * * *
* * *
 (C) Prior to the effective date of the proposed action, a franchisee receiving written notice from a franchisor proposing to terminate, discontinue, or not renew a franchise may file a protest with the board against the franchisor's proposed action. * * *
 (D) A franchisor shall not terminate, discontinue, or fail to renew a franchise before the holding of a hearing on any protest filed under this section, or after the hearing, if the board determines that good cause does not exist to terminate, discontinue, or not renew the franchise.
R.C. 4517.55 provides as follows with regard to good cause for termination:
 (A) In determining whether good cause has been established by the franchisor for terminating or failing to continue or renew a franchise, the motor vehicle board shall take into consideration the existing circumstances, including, but not limited to:
 (1) The amount of retail sales transacted by the franchisee during a five-year period immediately preceding such notice as compared to the business available to the franchisee;
 (2) The investment necessarily made and obligations incurred by the franchisee to perform its part of the franchise:
(3) The permanency of the franchisee's investment;
 (4) Whether it is injurious or beneficial to the public interest for the franchise to be modified or replaced, or the business of the franchisee disrupted;
 (5) Whether the franchisee has adequate motor vehicle sales and service facilities, equipment, vehicle parts, and qualified service personnel to reasonably provide for the needs of the consumers for the motor vehicles handled by the franchisee, and is rendering adequate service to the public;
 (6) Whether the franchisee fails to fulfill the warranty obligations of the franchisor required to be performed by the franchisee;
 (7) The extent and materiality of the franchisee's failure to comply with the terms of the franchise and the reasonableness and fairness of the franchise terms;
 (8) Whether the owners of the new motor vehicle dealer had actual knowledge of the facts and circumstances upon which termination is based;
 (9) Whether the proposed termination constitutes discriminatory enforcement of the franchise agreement.
 There is ample evidence in the record with regard to several factors enumerated in R.C. 4517.54. There is evidence that Spitzer Motors was woefully lacking in the area of retail sales, customer sales satisfaction and customer service satisfaction. Moreover, sales, service and satisfaction data did not improve and as the hearing examiner notes, they may have gotten worse after Alan Spitzer acquired the controlling interest in the dealership. The hearing examiner also made specific findings of fact, based upon the evidence, that the minimal investment made in the dealership and obligations assumed by Spitzer Motors weighed in favor of termination, and that public interest would best be served by termination of the dealer agreement. In light of the record, we conclude that the trial court did not abuse its discretion when it held that Toyota had good cause to terminate the Spitzer Toyota dealership. Accordingly, we overrule appellants' third assignment of error.
 For the foregoing reasons, we overrule appellants' first, second and third assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Motion denied; judgment affirmed.
BROWN and KLATT, JJ., concur.