OPINION
{¶ 1} Appellant, Ace Ventures L.L.C., appeals a judgment of the Franklin County Court of Common Pleas which affirmed an order of appellee, the Ohio Department of Transportation ("ODOT"), rejecting appellant's application to install outdoor advertising devices near a Lancaster highway.
 {¶ 2} In November 1999, appellant entered into five lease agreements with landowners to install billboards along U.S. Route 33 near Lancaster. In September 2000, appellant recorded the leases with the Fairfield County Recorder's Office. Shortly thereafter, ODOT's plans to construct a bypass highway around Lancaster were authorized, and appellant filed billboard applications with ODOT. In April 2001, ODOT denied the applications on the basis that the proposed locations for the billboards were too close to the projected interchange for the new highway. The matter was submitted to a hearing before an ODOT hearing examiner, who recommended upholding the denial of the applications. Appellant did not file written objections to the hearing examiner's report and recommendation, and, in March 2002, ODOT adopted the findings of the hearing examiner and denied the permit applications. Pursuant to R.C.119.12, appellant then appealed to the Franklin County Court of Common Pleas which affirmed ODOT's decision in February 2003. In its decision, the court stated:
The question of the 500-foot limit turns on the definition of the word "interchange". Clearly a highway interchange is an area and not a single object like a surveyor's pin or a building corner. * * *
* * *
Ace asserts that ODOT cannot possibly have an interchange of the dimensions in question here (roughly one mile) under this definition. However, it does not fall to the Court or Ace to give this definitional sentence it's [sic] meaning. ODOT is the entity best equipped to consider (among other things) federal highway rules, state law, design concerns, safety and speed considerations, and technological developments in automobiles and pavements surfaces and determine where an acceleration or deceleration lane begins or ends. The professionals at ODOT have the experience and expertise to make these judgment calls. Some of that expertise was on display for the Hearing Examiner in the proceedings below with the testimony of the highway engineers. This Court will not overturn the facts as decided below absent a showing of serious error in the fact-finding process or the misapplication of law. The distance decision below is supported by substantial evidence and is legally proper.
 {¶ 3} The court also rejected appellant's claim that ODOT's decision was inconsistent with another ODOT billboard decision, stating that the facts in the other case were sufficiently different so as not to be comparable. Finally, in rejecting appellant's argument that ODOT's decision resulted in an illegal taking of property because appellant's leases were recorded prior to the highway coming under ODOT supervision, the court held that appellant's lease agreements were entered into with the knowledge of the proposed bypass, and this argument was not the proper subject for R.C. 119.12 review.
 {¶ 4} Appellant assigns the following as error:
APPELLANT'S ASSIGNMENT OF ERROR NO. 1:
The Franklin County Court of Common pleas erred as a matter of law by determining the decision of the Ohio department of transportation was supported by reliable, probative and substantial evidence.
APPELLANT'S ASSIGNMENT OF ERROR NO. 2:
The Franklin County Court of Common pleas abused its discretion and erred as a matter of law by applying a standard of review greater than statutorily prescribed.
 {¶ 5} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an agency's order to determine whether the order is supported by reliable, probative and substantial evidence and is in accordance with law. In performing this review, the court of common pleas may consider the credibility of the witnesses as well as the weight and probative character of the evidence. To a limited extent, the standard of review permits the court of common pleas to substitute its judgment for that of the administrative agency; however, the court of common pleas must give due deference to the administrative resolution of evidentiary conflicts. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108.
 {¶ 6} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, the court of appeals does not determine the weight of the evidence. In reviewing the decision of the court of common pleas, as to whether an agency's order is or is not supported by reliable, probative and substantial evidence, an appellate court's role is limited to determining whether or not the court of common pleas abused its discretion. Hartzog v. Ohio State Univ. (1985),27 Ohio App.3d 214. An abuse of discretion implies the decision is both without a reasonable basis and is clearly wrong. Angelkovski v. BuckeyePotato Chips Co. (1983), 11 Ohio App.3d 159. This standard of review is limited to issues such as the weight of the evidence and credibility of the witnesses as to which the court of common pleas has some limited discretion to exercise. On questions of law, the court of common pleas does not exercise discretion and the court of appeals' review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 339.
 {¶ 7} Ohio Adm. Code 5501:2-2-02(A) sets forth requirements for the erection and control of outdoor advertising and provides, in part:
(A) Restrictions on outdoor advertising adjacent to the interstate and primary highway systems: all advertising devices erected or maintained within six hundred sixty feet of the nearest edge of the right-of-way and visible from the main traveled way shall conform to the following requirements:
* * *
(3) Spacing criteria:
* * *
(b) Primary highway systems: for any advertising device adjacent to a primary highway system, the following spacing requirements shall apply:
* * *
(ii) Advertising devices, whether or not visible to the main-traveled way of the primary system, shall not be located within one hundred fifty two and four tenth meters or five hundred feet of an interchange.
* * *
(c) Measurements
* * *
(iii) The distance from an interchange shall be measured at the nearest point of the beginning or ending of pavement widening of the exit or entrance roadway to the main-traveled way along the right edge of the main-traveled way of the interstate system or primary system.
 {¶ 8} Ohio Adm. Code 5501:2-2-01(M) defines "interchange" as follows:
(M) "Interchange" means both a junction of two or more highways by a system of separate levels that permit traffic to pass from one to another without the crossing of traffic streams, and a system of interconnecting roadways in conjunction with one or more grade separations that provides for the movement of traffic between two or more roadways or highways on different levels.
 {¶ 9} Appellant's assignments of error are related and will be discussed together. Appellant first argues that ODOT applied an overly expansive point of measurement which ignores the administrative code definition of interchange. Specifically, appellant asserts that, because the point at which ODOT claims the interchange begins was merely a widening of the roadway without there being a "junction of two or more highways," a "system of separate levels," or a "system of interconnecting roadways" in conjunction with grade separations, ODOT drew the line in the wrong place and the proposed locations for appellant's billboards were acceptable.
 {¶ 10} With regard to ODOT's interpretation of the term "interchange," the hearing examiner stated:
The term "interchange" as defined above by the Ohio Administrative Code is subject to interpretation. ODOT has the right to reasonably interpret its regulations especially when construed in light of the engineering testimony in this matter. ODOT's determination in this matter of the boundaries of the interchange is reasonable." As long as the construction given by the agency to a rule or statute is reasonable and consistent with the underlying legislative intent, courts will allow the construction to stand" * * *
 {¶ 11} The hearing examiner found persuasive the testimony of James A. Barna, a licensed professional engineer with ODOT, and that of ODOT geometrics engineer Kathleen A. King, each of whom confirmed that this interchange is a directional type of interchange, which is larger than other types of interchanges because it is designed to accommodate a large volume of traffic and, thus, requires a long deceleration ramp. Both engineers also testified that the proposed billboard locations came within 500 feet of the beginning of the widening of the highway in preparation for the split. Thus, pursuant to Ohio Adm. Code5501:2-2-02(A)(3)(c)(iii), which defines an interchange as beginning at the nearest point of the beginning of the pavement widening of the exit roadway, even though the exit roadway begins long before there is a splitting of the roadway, a change in grade levels, or the addition of interconnecting roadways, the widening constitutes the outer boundary of the interchange. The rationale for this interpretation was explained by Barna:
* * * [T]he limits of the interchange beginning at the decel[eration] lanes on both the eastbound here or the further west point and the east point, within these limits here is where we have a lot of movement of our traffic. We have traffic shifting lanes here. One's either going to go to the new bypass or to the directional for the business loop bypass. When we have movement or where we're most likely to have movement of traffic, we do not want any type of advertising to where the motorists are going to pay attention to the advertising in the movement of traffic here. Given where these sign locations are located, that may present a problem with that. To me, that's a safety issue. You want your drivers focused as you're coming to the interchange because they're going to have to make decisions here.
(Tr. at 78-79.)
 {¶ 12} Our review of the record indicates ODOT based its determination upon reliable, probative and substantial evidence that the limits of the interchange as determined by ODOT engineers were in compliance with the guidelines set forth in the Ohio Administrative Code.
 {¶ 13} Appellant also asserts that, because the leases were recorded prior to ODOT obtaining jurisdiction over this section of highway, these billboards should receive the same waiver of the measurement requirements ODOT applied to another outdoor advertising company placing billboards on a similar section of road but in a different location. According to appellant, the fact ODOT allowed the billboards in the other location while denying them here is evidence of an inconsistent rule interpretation demanding reversal. This argument is not well-taken. The evidence before the hearing examiner indicated the other billboard was allowed because it was in existence before the nearby road came under ODOT jurisdiction. Appellant also cannot successfully argue that recording its lease agreements just prior to ODOT's gaining final authorization for the Route 33 bypass project protected it from application of these administrative rules. Clearly, the bypass project was contemplated long before appellant sought to place billboards there, and the court correctly found that appellant "cannot assert that it was surprised or unexpectedly disadvantaged by the assertion of regulation over this location."
 {¶ 14} Finally, appellant asserts the court applied an overly stringent standard of review when it stated that it would only overturn the case upon a showing of "serious error" in the fact-finding process or the misapplication of the law. Appellant is correct that this statement does not enunciate the appropriate standard of review; however, in reading the court's entire decision it is clear the court did analyze whether ODOT's decision was based upon reliable, probative and substantial evidence and was in accordance with law, and so the court did not abuse its discretion.
 {¶ 15} Because we conclude that ODOT applied the appropriate definitional standards and based its rejection of appellant's advertising device applications upon reliable, probative and substantial evidence that the proposed locations would be too close to the planned interchange, we find that the court did not abuse its discretion in affirming ODOT's decision. Appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BROWN and WATSON, JJ., Concur.