OPINION JUDGMENT ENTRY
{¶ 1} Appellant Joseph Benincasa appeals the decision of the Stark County Court of Common Pleas, which affirmed a one-day suspension against appellant by his employer, Appellee Stark County Board of Mental Retardation and Developmental Disabilities ("MRDD"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant is employed as a building manager in Appellee MRDD's West Stark Center ("WSC") facility. It is undisputed that appellant is a "management employee" of a county board of mental retardation and developmental disabilities pursuant to R.C.5126.23(A). In August 2002, the WSC building's air conditioning system stopped operating. At that time, WSC's maintenance and grounds supervisor, Tim Beard, was on vacation. Accordingly, a conference call was conducted between appellant, his supervisor Paul Herrera, Mary Jane Young (another WSC manager), and Superintendent Tom Seesan. During the conference call, Seesan told the three others to get the air conditioning system fixed, regardless of the cost.
 {¶ 3} Appellant was able to temporarily fix the problem by getting a compressor unit restarted. Appellant contacted EMC, a local heating and cooling company. EMC's repairperson, Allen Sherwood, visited the WSC facility on several occasions to work on the air conditioning system. Appellant was present on some of these occasions. On August 19, 2002, another of appellant's supervisors, Tim Coverdale, instructed appellant that Tim Beard had returned from vacation, and that the responsibility for fixing the air conditioning would be taken over by Beard. Coverdale instructed appellant that he was not to remain involved in the air conditioning repair situation at WSC.
 {¶ 4} The next day, August 20, 2002, appellant sent an e-mail to Beard, Seesan, Coverdale, and several others. The e-mail reads in pertinent part as follows:
 {¶ 5} "* * * I have been requested to stay out of the air conditioner situation. Please forward all concerns/complaints to Mr. Beard @ WDC. Someone will need to turn [on] the system daily @ 6:30 to cool the building and turn the system off, with the cool weather the AC needs turned off about 1PM. Listed below the direction [sic] for the system. * * * The EMC consultant is to contact Mr. Beard to review his findings. Thanks for your support and good luck."
 {¶ 6} Seesan sent the following e-mail response to appellant at 2:25 P.M.:
 {¶ 7} "Joe, let's see — if you don't play the game my way, I'll take my ball and go home. Is that what this message is telling me?
 {¶ 8} "Once again, you are beginning to get on my nerves and everyone else's as a matter of fact. Somehow, I think you get some sadistic joy out of that. You being asked to stay out of the air conditioner situation had to do with the process we are going through for its repair, not the day to day operation or monitoring of the system. You were getting in the way of the repair process. I understand that your work schedule starts at 6:30 am. As a manager in that building, I am requesting that you continue to do what you are doing with the air conditioning system on a daily basis. Just keep your nose out of the repair process, unless you are asked for specific information or assistance. I am also ordering you to send a message to Tim Beard, Tim Coverdale, Tom Wengerd, Bob Spence, Marcy Kiefer and Jack Frient rescinding your previous message. An apology to those would not hurt either.
 {¶ 9} "Joe, methinks you need some training in engaging the brain before opening the mouth."
 {¶ 10} At 3:46 P.M., appellant replied to Seesan as follows:
 {¶ 11} "Tom my schedule starts at 7:00 a.m. and I was told by my supervisor that I was to keep out of the air conditioning business. I was also told by Mr. Herrera to start up the system @ 6:30 on Monday and Tim Beard would be there. I also told you I have given all the input to Mr. Beard. I also started the system on Saturday and Sunday to nurse it along. Tom I will not rescind anything, I will also make a copy of this for my file. I think you should review this email on your part. I also think you should talk to Mr. Herrera about my efforts to keep WSC open [,] if I was not involved we would have had to move to Eastgate or Southgate. I actually saved you money! * * * The fact of there [sic] matter this is a building issue and Tim B is your man and there is reason [sic] for me to be involved and by this e-mail that is exactly what you want. I played ball and I play to win and I never quit!"
 {¶ 12} As a result of this correspondence, Seesan requested a pre-disciplinary hearing on the grounds of insubordination. Hearing Officer Bernie Hunt, Stark County EEO Officer, subsequently issued a report finding sufficient evidence to support a charge of insubordination. On September 17, 2002, Seesan issued a one-day suspension against appellant, without pay, effective September 19, 2002.
 {¶ 13} Appellant appealed the suspension to the MRDD Board, which conducted a full hearing on February 13, 2003. Following the presentation of testimony, the MRDD board deliberated and voted unanimously in open session to uphold the disciplinary action. Appellant thereafter filed an administrative appeal with the Stark County Court of Common Pleas. On September 9, 2003, however, the court, in a thorough twelve-page judgment entry, affirmed the decision of the MRDD Board, concluding as follows:
 {¶ 14} "Benincasa argues that he did not follow Seesan's directive because it was unprofessional and unreasonable. However, this Court is not in the position to second-guess the Superintendent nor substitute its ideas of proper managerial style for the facts at hand Although this Court might have issued the directive using different language than that selected by the Superintendent, or saw the facts in a different way than the Board, based upon the legal standards by which it is bound, this Court finds that there was a preponderance of substantial, reliable, and probative evidence to support the Board's decision." Judgment Entry at 11.
 {¶ 15} Appellant filed a notice of appeal on October 9, 2003, and herein raises the following sole Assignment of Error:
 {¶ 16} "I. The court of common pleas erred when it affirmed the decision of the stark county board of mental retardation and developmental disabilities because the record failed to prove by a preponderance of the evidence as required by Ohio revised code section 5126.23 that appellant violated any section of the revised Code, Ohio administrative code, or rule, regulation, or direct order or reasonable directive of the Stark County Board of Mental Retardation and Developmental Disabilities in this matter."
 I. {¶ 17} In his sole Assignment of Error, appellant contends the trial court erred in affirming the MRDD Board's decision to suspend appellant from employment. We disagree.
 {¶ 18} The appeal of the MRDD Board's decision is governed by R.C. 5126.23(G). In an appeal to the court of common pleas, the court must determine if a preponderance of reliable, probative and substantial evidence exists, and, if so, it must affirm the decision. The common pleas court may consider the entire record, including the credibility of the witnesses and the weight and probative character of the evidence. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 111. The common pleas court may not substitute its judgment for that of the agency. Instead, if a preponderance of reliable, probative and substantial evidence exists, the court must affirm the agency's decision.Dudukovich v. Lorain Metro. Housing Auth. (1979),58 Ohio St.2d 202, 207.
 {¶ 19} On appeal to the court of appeals, we do not re-weigh the evidence. Rather, our review is limited to a question of whether the trial court abused its discretion in finding a preponderance of reliable, probative and substantial evidence exists to support the decision of the Board. Id. at 207. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Absent an abuse of discretion, we must affirm the judgment of the trial court. Dollv. Stark County Board of MRDD, Stark App. No. 2001CA00255, 2001-Ohio-7052, citing Unit. Hosp., Univ. of Cincinnati Collegeof Medicine v. State Emp. Relations Bd. (1992),63 Ohio St.3d 339, 344.
 {¶ 20} R.C. 5126.23(B) states that "[a]n employee may be removed, suspended, or demoted in accordance with this section for violation of written rules set forth by the board or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or other acts of misfeasance, malfeasance, or nonfeasance."
 {¶ 21} As an initial matter, we address appellant's proposition that a common pleas court should consider whether evidence has been presented showing that the directive in question was "reasonable." Specifically, appellant portrays himself as an employee who, despite having coordinated the rescue of an ailing but indispensable air conditioning system during the maintenance supervisor's vacation, was suddenly directed by Coverdale, his supervisor, to get out of the air conditioning situation.[1] Appellant contends that the e-mail directive from Seesan to rescind appellant's e-mail leaving directions for operating the system was thus unreasonable. Appellant directs us by analogy to case law holding that failure to obey an illegal order cannot constitute insubordination. See Carroll v.Department of Administrative Services (1983),10 Ohio App.3d 108,110. In addition, in Milyo v. Board of Review, Ohio Bureauof Employment Services (July 30, 1992), Cuyahoga App. No. 60841, the Eighth District Court of Appeals held "an employee's willful refusal to obey a legitimate and reasonable order or directive given by an employer which is not inconsistent with the employee's stated duties and which does not affect the health or safety of the employee or others, constitutes an act of insubordination and could be a justifiable cause for a termination of employment." (Emphasis added).
 {¶ 22} However, we are unpersuaded by appellant's arguments in this regard. Insubordinate is simply defined as "unwilling to submit to authority." O'Neill v. Clark Cty. Bd. of Com'rs (Feb. 16, 2001), Clark App. No. 2000 CA 69, citing Webster's New Collegiate Dictionary (1976) 599. Had the General Assembly intended such a potentially sweeping justification for insubordination as allowing MRDD employees to challenge directives on the grounds of unreasonableness, we would expect to find the same in the text of the Revised Code. Moreover, the holding of Milyo, supra, does not logically extend to the conclusion that refusal to obey an unreasonable directive cannot result in insubordination.
 {¶ 23} The record in the case sub judice reveals that Superintendent Seesan issued a clear order to appellant to rescind his earlier e-mail. To this, appellant replied: "Tom [,] I will not rescind anything." Appellant admitted to this reply. See Tr. at 68. Seesan further clarified any confusion on appellant's duties by ordering him to stay out of the repair of the system, but to continue the day-to-day operation and monitoring of the system. To this, appellant replied that other employees were capable of doing this task, essentially indicating a refusal to perform a work-related task. Appellant has never sought to argue that Seesan's directives were illegal, violative of anyone's constitutional rights, or a danger to the health and safety of any employee or MRDD client.
 {¶ 24} Accordingly, having examined the record, we conclude the trial court did not abuse its discretion in finding the existence of a preponderance of reliable, probative, and substantial evidence to support the MRDD Board's decision. Appellant's sole Assignment of Error is therefore overruled.
 {¶ 25} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J. Hoffman, P.J., and Boggins, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.
[1] Appellant, for example, testified as follows before the MRDD Board:
"And the other confusion about this whole matter is that I had two bosses at the time this was going on. Mr. Herrera was the boss under the building aspect, Mr. Coverdale underneath the direction aspect. I was instructed by Mr. Herrera for the building thing. But I was instructed to stay out by Mr. Coverdale. So I followed my immediate supervisor since he is my supervisor. Assumably technically Paul [Herrera] should have been the one to tell me to stay out of it." Tr. at 57.