OPINION
{¶ 1} Plaintiffs-appellants Glenn and Dale Hartle appeal from the June 21, 2004, Judgment Entry of the Coshocton County Court of Common Pleas which affirmed an adjudication order of the Coshocton County Board of Health. Defendant-appellee is the Coshocton County Board of Health.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellants Glenn and Dale Hartle (brothers) have been the owners/operators of the River Front Campground since 1985. The campground is located in Coshocton County, Ohio.
 {¶ 3} In 2000, appellee, the Coshocton County Board of Health, voted to deny appellants' application for renewal of their combined park-camp license.[1] The denial of the renewal of the license was appealed to the Coshocton County Court of Common Pleas. See Hartle v. Coshocton County Department ofHealth, Case No. 01-CI262 and Hartle et al. v. Coshocton CountyDepartment of Health, et al., Case No. 00-CI-313. The matter was remanded to the Board of Health.
 {¶ 4} Upon remand, appellants' permit was again denied. A hearing on the denial of the permit was held on February 13, 2003, before a hearing examiner appointed by the Coshocton County Board of Health. The hearing examiner filed his report and recommendation on August 11, 2003.
 {¶ 5} Appellee adopted the hearing examiner's report and recommendation with minor exception and issued its adjudication order on October 15, 2003. Pursuant to that order, appellants' license was suspended indefinitely and the application for renewal of that license was denied.
 {¶ 6} Appellants appealed the adjudication order to the Coshocton County Court of Common Pleas. During the proceedings in the Court of Common Pleas, a motion for stay was filed by appellants. By Judgment Entry filed May 20, 2004, the Motion for Stay was granted.[2] The issues were briefed by the parties and on June 21, 2004, the trial court affirmed the adjudication order of the Coshocton County Board of Health.
 {¶ 7} It is from the June 21, 2004, Judgment Entry that appellants appeal, raising the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT ERRED IN AFFIRMING THE ADJUDICATION ORDER AND THE HEARING EXAMINER'S REPORT AND RECOMMENDATION INCORPORATED THEREIN BASED UPON THE TESTIMONY AND EVIDENCE PRESENTED AT HEARING.
 {¶ 9} "II. THE TRIAL COURT'S DECISION AND JUDGMENT ENTRY IS CONTRARY TO LAW.
 {¶ 10} This case involves an appeal to the Court of Common Pleas from an agency decision suspending appellants' license to operate a campground, pursuant to R.C. 119.12. Accordingly, the Court of Common Pleas' review was limited: "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12.
 {¶ 11} In this case, the Court of Common Pleas affirmed the decision of the agency. On appeal to this court, the standard of review is more limited. Unlike a court of common pleas, the court of appeals does not determine the weight of the evidence.Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd.of Edn. (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241. In reviewing the common pleas court's determination that the agency's order is or is not supported by reliable, probative, and substantial evidence, the appellate court's role is, in part, limited to determining whether the common pleas court abused its discretion. Hartzog v. Ohio State Univ. (1985),27 Ohio App.3d 214, 216, 500 N.E.2d 362, 364-365. On questions of law, the common pleas court does not exercise discretion and the court of appeals' review is plenary. Univ. Hosp., Univ. of CincinnatiCollege of Medicine v. State Emp. Relations Bd. (1992),63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus; In reRaymundo (1990), 67 Ohio App.3d 262, 586 N.E.2d 1149.
 {¶ 12} In this case, appellants' license to operate a combined park-camp campground was suspended upon a finding that the campground was in violation of OAC 3701-25-62's requirement that the campground have at least one dump station that complies with sub-sections (B), (C), (G), (H), (I), (J) and (L) of that rule and because it was in violation of OAC 3701-25-63's requirement that the campground have a system in place that disposes of "gray" water left from cooking, dishwashing, laundry, bathing, etc.
 {¶ 13} Appellants respond that the campground need not have a central dump station nor gray water disposal system because the campground is "grandfathered" out of such requirements. We disagree. We will address each OAC requirement in turn.
 {¶ 14} OAC 3701-25-60(B)(4), states as follows, in relevant part: "[c] combined park-camps may utilize a septage hauler capable of removing the contents from holding tanks of recreational vehicles or portable camping units on site in accordance with paragraph (G) of rule 3701-25-59 of the Administrative Code. At least one dump station shall be provided in accordance with rule 3701-25-62 of the Ohio Administrative code for emergency use or for temporary storage; . . ." The evidence shows that the campground does not have such a dump station.
 {¶ 15} Appellants contend that they are grandfathered out of any such requirement by OAC 3701-25-62(K). Ohio Administrative Code OAC 3701-25-62 states as follows:
 {¶ 16} "The licensee of a . . . combined park-camp . . . shall ensure that the park or camp meets the following dump station requirements:
 {¶ 17} "(A) Dump stations shall be provided in a ratio of one station for each one hundred park or camp sites. Where recreational vehicles or portable camping units with holding tanks are segregated in a combined park-camp, the number of dump stations required shall apply only to those segregated sites;
 {¶ 18} "(B) Each dump station shall have an available water supply for the flushing of vehicles [sic] sewage holding tanks and dump station areas;
 {¶ 19} "(C) Each dump station shall be constructed and operated so as to protect the water supply and all other water outlets within the park or camp from contamination due to backflow in accordance with the [certain] requirements. . . .
 {¶ 20} "(D) Each dump station shall have a holding tank which is of water-tight design and capable of holding a minimum volume of one thousand gallons or shall be connected to a sewage collection system;
 {¶ 21} "(E) Each dump station shall be equipped with a concrete pad surrounding the drain. The concrete pad shall meet all [delineated] requirements. . . .
 {¶ 22} "(F) Each dump station shall be easily accessible to the entrance and exit area of the park or camp;
 {¶ 23} (G) Each dump station shall be properly sealed to prevent nuisances;
 {¶ 24} "(H) Each dump station shall be posted with signs that are clearly and indelibly labeled stating instructions for use and that the water supply is to be used for flushing and cleaning purposes only, and that the water shall not be used for human consumption;
 {¶ 25} "(I) Each dump station shall be maintained in a clean and functional manner by the licensee;
 {¶ 26} "(J) Each dump station shall be located such that any water source or service outlet used for filling water tanks or other uses for human consumption is at least fifty feet away from the dump station facility. Under no circumstances shall the licensee permit a hose that is long enough to reach a water outlet that is used for human consumption to be connected to a water service outlet at a dump station. The licensee also shall not permit a hose that is long enough to reach the dump station area to be connected to a water service outlet that is used for human consumption.
 {¶ 27} "(K) A park or camp that was in existence andlicensed on or before May 24, 1992 is not required to comply withparagraphs (A), (D), (E), and (F) of this rule unless either ofthe following is the case:
 {¶ 28} "(1) The park or camp is substantially altered or expended [sic] in such a manner that plan approval is required under rule 3701-25-52 of the Administrative Code; or
 {¶ 29} "(2) The licensor determines that a nuisance exists because there is an inadequate number of dump stations to serve the number of recreational vehicles or portable camping units located within the park or camp.
 {¶ 30} "(L) Dump stations shall be installed and maintained in accordance with the approved plans." (Emphasis added.)
 {¶ 31} The Hearing Examiner held that even if the campground qualified under OAC 3701-25-62 (K) as a grandfathered campground, it was not relieved of the requirement to have at least one, central dump station. We agree. Although sub-section (K) of OAC 3701-25-62 appears to apply to appellant, it would only relieve appellants of having a certain number of dump stations per given number of park or camp sites. It does not relieve appellants of the requirement to have at least one dump station under OAC 3701-25-60(B) and in compliance with OAC 3701-25-63(B), (C), (G), (H), (I), (J) and (L).
 {¶ 32} Accordingly, we find that appellants' argument that the campground need not provide a dump station is meritless. Further, we find that the trial court did not abuse its discretion nor err as a matter of law when it affirmed the decision of the Board that the campground is in violation of OAC 3701-25-62.
 {¶ 33} In addition, there was an issue as to whether the campground was in violation of OAC 3701-25-63's requirement that the campground have a system in place that disposes of waste water, known as "gray" water, left from cooking, dishwashing, laundry, bathing, etc. Appellants argue that the campground does not have to comply with OAC 3701-25-63 because it is grandfathered out of such a requirement.
 {¶ 34} However, OAC 3701-25-60 states as follows, in relevant part:
 {¶ 35} "(A) The licensee of a . . . combined park-camp . . . shall ensure that liquid waste is not discharged to the surface of the ground and that the waste is disposed of in a waste water disposal facility or facilities which meet the requirements of rule 3701-256-3 of the Administrative Code.
 {¶ 36} "(B) The licensee shall ensure that the following liquid waste and sewage facilities, as applicable, are present at a park or camp:
 {¶ 37} . . . "(3) Combined park-camps shall have individual site connections to a sewage collection system or dump stations that meet the requirements of rule 3701-256-2 of the Administrative Code."
 {¶ 38} Appellants contend that the campground is relieved of the requirement to have a waste water disposal system by OAC 3701-25-63(F). OAC 3701-25-63 states as follows:
 {¶ 39} "When waste water disposal facilities are required at a . . . combined park-camp as specified in rule 3701-25-60 of the Administrative Code, the licensee shall ensure that the waste water disposal facilities meet the following requirements:
 {¶ 40} "(A) Waste water disposal facilities shall be located so that no park or camp site is farther than two hundred feet walking distance from a waste water disposal facility and there shall be no more than one facility for every twelve sites;
 {¶ 41} "(B) Waste water disposal facilities shall be easily accessible and provided with a sign indicating that the facility is for liquid waste water only and that no sewage is permitted;
 {¶ 42} "(C) Waste water disposal facilities shall be designed and constructed to accept liquid waste and maintained to keep the facility and the area around the facility free from any liquid waste nuisances;
 {¶ 43} "(D) Direct or indirect connection of any pipe, hose or direct discharge from any recreational vehicle, portable camping unit, or other source to a waste water disposal facility is prohibited.
 {¶ 44} "(E) Except as provided in paragraphs (F) and (G) of this rule, a waste water disposal facility installed in a park or camp after August 17, 1992 shall consist of one of the following:
 {¶ 45} "(1) A plastic or concrete holding tank which is of a water-tight design and is capable of holding at least two hundred fifty gallons. The drain opening through which waste water is deposited into the holding tank shall be installed in a plastic or concrete riser which shall extend a minimum of twelve inches above the ground surface. The drain opening shall be surrounded by a surface which extends from the opening to the sides of the riser and which slopes to the opening. The drain opening shall be covered by a drain grate and shall be located at least four inches below the top edge of the riser. As of the effective date of this rule, the drain opening of a new or substantially altered holding tank shall be installed in a riser which shall extend a minimum of eighteen inches above the ground surface; or
 {¶ 46} "(2) Individual site connections to a sewage collection system; or
 {¶ 47} "(3) An alternative waste water disposal system approved by the director when it can be demonstrated that the soil conditions are conducive for filtration of liquid waste water.
 {¶ 48} "(F) A park or camp that was in existence andlicensed on or before August 17, 1992 is not required to complywith paragraph (E) of this rule unless either of the following isthe case:
 {¶ 49} "(1) The park or camp is substantially altered or expanded in such a manner that plan approval is required under rule 3701-25-52 of the Administrative Code; or
 {¶ 50} "(2) The licensor determines that any existing waste water disposal facility is causing a nuisance because its location, installation, or design is not in compliance with paragraph (C) of this rule.
 {¶ 51} "(G) Temporary park-camps shall comply with the requirements of paragraphs (A), (B), and (C) of this rule and shall provide adequate methods for disposal of waste water from camping units which may include but are not limited to: "(1) On-site waste water disposal facilities which comply with the requirements of paragraph (E) of this rule; or
 {¶ 52} "(2) Disposal in accordance with paragraph (F) or (G) of rule 3701-25-59 of the Administrative Code.
 {¶ 53} "(H) As of the effective date of this rule, the Ohio environmental protection agency shall approve plans for waste water disposal facilities located within a one hundred year floodplain.
 {¶ 54} "(I) All waste water disposal facilities shall be installed and maintained in accordance with the approved plans." OAC 3701-25-63. (Emphasis added).
 {¶ 55} Although a grandfather clause, sub-section F of OAC 3701-25-63, appears to apply to this campground and thereby relieves the campground from compliance with portions of OAC 3701-25-63(E), it does not relieve the campground from having a waste water disposal system that complies with OAC 3701-25-60 and the remaining portions of OAC 3701-25-63. Thus, the campground was required to have some type of disposal system for waste or "gray" water. It is undisputed that the campground has no such system.
 {¶ 56} Accordingly, we find that appellants' argument is meritless. Further, we find that the trial court did not abuse its discretion nor err as a matter of law when it affirmed the decision of the Board.
 {¶ 57} Appellants' first assignment of error is overruled.
 II {¶ 58} In the second assignment of error, appellants essentially contend that they were denied due process due to a failure to provide proper notice. We disagree.
 {¶ 59} Appellants' arguments center around R.C. 119.06. Appellants contend that R.C. 119.06 requires that a licensee receive notice and an opportunity for a hearing prior to the issuance of an order. Appellants assert the license was suspended by the Board without notice and hearing.[3] Accordingly, appellants assert that the Order of the Board is not valid, pursuant to R.C. 119.06.[4]
 {¶ 60} Appellee responds that appellants received notice and opportunity for hearing in accordance with R.C. 119.06 and R.C.119.07. Appellees contend that appellants received the notice that they were entitled to receive and that the hearing before the hearing examiner was held pursuant to their request for such a hearing. We agree.
 {¶ 61} The Board's initial decision to deny a license to appellants was a proposed denial of the application. The record reflects that appellants were notified of their right to a hearing on the Board's proposed decision and that appellants exercised that right. The hearing before the hearing examiner was the required hearing. Following the hearing, the Board issued a final decision. It was that final decision which could be and was appealed to the Court of Common Pleas.
 {¶ 62} Accordingly, we find no abuse of discretion nor error by the trial court in affirming the Order of the Board.
 {¶ 63} Accordingly, we overrule appellants' second assignment of error.
 {¶ 64} The judgment of the Coshocton County Court of Common Pleas is affirmed.
Edwards, J., Boggins, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Coshocton County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] This appeal concerns a somewhat convoluted set of facts and circumstances. Therefore, a more detailed set of facts will be presented in the context of the assignments of error.
[2] The Stay was continued pending this appeal, by Judgment Entry filed July 3, 2004.
[3] In addition, appellants attempt to argue that the number of sites at the campground was reduced from 150 to 89 sites in 2000 without notice and hearing. However, this appeal is taken from the denial of appellants' application for a license to operate the campground. Issues concerning a reduction in the number of campsites are beyond the scope of this appeal.
[4] Revised Code 119.06 states that "[n]o adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13 of the Revised Code. Such opportunity for a hearing shall be given before making the adjudication order except in those situations where this section provides otherwise." R.C. 119.06 (in relevant part).